1   JOHN ALLCOCK (Bar No. 098895)
    RANDALL E. KAY (Bar No. 149369)
2   ERICA J. PASCAL (Bar No. 248677)
    DLA PIPER US LLP
3   401 B Street, Suite 1700
    San Diego, CA  92101-4297
4   Tel:  619.699.2800
    Fax:  619.699.2701
5   john.allcock@dlapiper.com
    randy.kay@dlapiper.com
6   erica.pascal@dlapiper.com

7   [*Additional attorneys listed on following page*]

8   Attorneys for Defendants/Counterclaimants
9   NEXTEL COMMUNICATIONS, INC., et al.

10              UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12   ENOVSYS LLC, a California limited        CASE NO.  CV 06-5306-RSWL (SHx)
     liability company,
13                                            **NEXTEL OF CALIFORNIA, INC.,**
                     Plaintiff,               **ET AL.'S MEMORANDUM OF**
14                                            **POINTS AND AUTHORITIES IN**
          v.                                  **SUPPORT OF MOTION FOR**
15                                            **SUMMARY JUDGMENT OF**
     NEXTEL COMMUNICATIONS,                   **NONINFRINGEMENT**
16   INC., et al.,
17                   Defendants.

18   NEXTEL COMMUNICATIONS,                   Date:          February 14, 2008
     INC., et al.,                            Time:          9:00 a.m.
19                                            Courtroom:     21
                     Counterclaimants,
20                                            Judge:      Hon. Ronald S.W. Lew
          v.                                  Discovery Cutoff:   November 26, 2007
21                                            Pretrial Conf.:     April 7, 2008
     ENOVSYS LLC, a California limited        Trial:              May 6, 2008
22   liability company,
23                   Counterdefendant.

24
25
26
27
28

1  RAYMOND W. MORT III
   (admitted pro hac vice, TX Bar No. 00791308)
2  DLA PIPER US LLP
   1221 South MoPac Expressway, Suite 400
3  Austin, TX 78746
   Tel:  (512) 457-7234
4  Fax:  (512) 457-7001
   raymond.mort@dlapiper.com
5
   JOSHUA BRIONES (Bar No. 205293)
6  DLA PIPER US LLP
   1999 Avenue of the Stars, Fourth Floor
7  Los Angeles, CA  90067-6022
   Tel:  (310) 595-3076
8  Fax:  (310) 595-3376
   joshua.briones@dlapiper.com
9

10  Attorneys for Defendants/Counterclaimants
    NEXTEL COMMUNICATIONS, INC., et al.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................. 1

II. BACKGROUND ............................................................................... 2

    A. Two Related Patents Are at Issue in This Lawsuit ............................. 2

    B. The Accused Networks ..................................................................... 3

III. ARGUMENT ................................................................................... 3

    A. Summary Judgment Standard ......................................................... 3

    B. Plaintiff Lacks Evidence to Support Its Allegations of Direct Infringement ................................................................................ 4

        1. Plaintiff Is Barred From Asserting Infringement Under the Doctrine of Equivalents ...................................................... 5

            a. Plaintiff Surrendered All Rights to Equivalents During the Prosecution of the Patents ............................. 5

            b. Even if Any Latitude Were Available Under the Doctrine of Equivalents, Plaintiff Has No Evidence That the Accused Products and Services Infringe Under This Theory ............................................. 8

        2. Defendants Are Not Liable for Infringement of the '159 Patent Because No Accused System Satisfies Each Element of the Asserted Claims ................................................. 9

        3. Plaintiff Has Limited Its Infringement Allegations to "Network Initiated Location Requests." ...................................... 9

    C. Plaintiff Lacks Any Evidence Of Direct Infringement That Would Support Its Claims of Indirect Infringement ......................... 10

        1. Plaintiff Lacks Evidence of Any Direct Infringement by Others That Would Support a Claim of Indirect Infringement .............................................................................. 10

        2. The Acts Alleged by Plaintiff Fail to Demonstrate Direct Infringement of the Asserted Claims ........................................ 11

1

## TABLE OF CONTENTS
### (continued)

2

Page

3

4

a.   For the '159 Patent, Claim 1, the Accused Nextel iDEN Network Is Not a "Satellite Paging Communications System." .............................................. 12

5

6

7

8

b.   The Accused Nextel iDEN Network Does Not Satisfy "the System Divulging to Certain or All Callers . . . While Blocking Such Information From Being Divulged to Certain or All Other Callers" as Required for Claim 1 of the '159 Patent ...................... 12

9

10

c.   No Evidence Exists That an Accused System Divulges the Global Location to a Caller ...................... 13

11

12

d.   No Evidence Exists That Any Step of Claim 11 of the '461 Patent Has Ever Been Performed .................... 14

13

14

15

e.   No Evidence Exists That Either Accused System "Continuously Tracks" as Recited in Claims 1, 2 and 23 of the '461 Patent ................................................ 16

16

17

f.   There Is No Evidence That an Accused System Maintains a First and Second Profile as Recited in Claim 28 of the '461 Patent ............................................ 17

18

19

20

g.   There Is No Evidence That an Accused Mobile Remote Unit Has the Ability to Deny . . . Said Establish Location Information . . . During a Period of Time as Recited in Claim 25 of the '461 Patent ........ 18

21

22

23

24

h.   There Is No Evidence That Any Accused CDMA Mobile Phone Has the Ability to Resolve a Global Position or the Ability to Establish Its Global Position at the Network as Recited Claims 1, 2, 25, and 28 of the '461 Patent ................................................ 19

25

26

D.   Plaintiff Lacks Any Evidence That Defendants Induced Infringement of Any of the Asserted Claims ...................................... 19

27

28

1

## TABLE OF CONTENTS
### (continued)

2

Page

3

E.   Plaintiff Has No Evidence of Contributory Infringement by
Defendants ............................................................................................ 21

4

5

IV.   CONCLUSION ................................................................................................ 23

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### CASES

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*,
    501 F.3d 1307 (Fed. Cir. 2007)...........................................................14, 15, 20

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007)...........................................................11, 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................4, 23

*DSU Medical Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006).........................................................19, 20, 21

*Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*,
    347 F.3d 1314 (Fed. Cir. 2003).........................................................4, 12

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004)....................................................................10

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
    442 F.3d 1301 ..............................................................................................10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    493 F.3d 1368 (Fed. Cir. 2007)....................................................................5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    535 U.S. 722 (2002) .....................................................................................5

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997).................................................................4, 9

*Hutchins v. Zoll Medical Corp.*,
    492 F.3d 1377 (Fed. Cir. 2007)....................................................................4

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993).....................................................10, 11, 14, 21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

*MicroStrategy Inc. v. Business Objects, S.A.*,
    429 F.3d 1344 (Fed. Cir. 2005) ................................................................. 10

*Mycogen Plant Science, Inc. and Agrigenetics, Inc. v. Monsanto Co.*,
    261 F.3d 1345 (Fed. Cir. 2001) .............................................................. 6, 7

*PODS, Inc. v. Porta Stor, Inc.*,
    484 F.3d 1359 (Fed. Cir. 2007) ................................................................. 7

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
    491 F.3d 1342 (Fed. Cir. 2007) ............................................................... 22

*Planet Bingo, LLC v. GameTech Intern., Inc.*,
    472 F.3d 1338 (Fed. Cir. 2006) ................................................................. 4

*Schering Corp. v. Geneva Pharmaceuticals*,
    339 F.3d 1373 (Fed. Cir. 2003) ............................................................... 23

*Warner-Jenkinson v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ..................................................................................... 5

## **STATUTES**

35 U.S.C. § 271(c) ......................................................................................... 21

Fed. R. Civ. P. 56(c) ....................................................................................... 4

## I.   INTRODUCTION

Defendants move for the Court for summary judgment of no infringement of the eight asserted claims in the two patents-in-suit (U.S. Patent Nos. 5,918,159 ("the '159 patent") and 6,560,461 ("the '461 patent")).  Plaintiff Enovsys LLC ("Enovsys") asserts claim 1 of the '159 patent and claims 1, 2, 11, 21, 23 and 25 of the '461 patent against Defendants.  Plaintiff bears the burden of proof for all aspects of its infringement claims.  Where, as shown herein, Plaintiff has no evidence on an essential element on which it bears the burden of proof, summary judgment in Defendants' favor must be granted.

The following grounds support summary judgment in Defendants' favor because Plaintiff lacks evidence of an essential element to demonstrate infringement or Plaintiff is estopped from pursuing these claims:

- The accused systems, devices and services do not infringe under the doctrine of equivalents because (1) as a matter of law, based upon the patents' prosecution history, Plaintiff is estopped from asserting infringement under the doctrine of equivalents; and (2) even if Plaintiff were not estopped, it has no evidence that any accused system or process infringes under this theory.

- Defendants' iDEN network does not literally infringe the '159 patent because Plaintiff has no evidence that the accused iDEN network transmits pages through satellites as required for claim 1.

- Defendants are not liable for infringement based on systems, services, and activities unassociated with "network-initiated location requests" on two grounds: (1) Enovsys explicitly limited its infringement contentions to "the context of network-initiated location requests"; and (2) Enovsys has adduced no evidence that Defendants infringe based on systems, services, and activities that are not associated with network-initiated location requests.

- Defendants are not liable for any claims of indirect infringement because Plaintiff has adduced no evidence to show that another person or entity, other

1

1   than the Defendants, directly infringed the patents as required for both forms

2   of indirect infringement -- inducing infringement and contributory

3   infringement.  Moreover for any acts or structure Enovsys has identified,

4   these do not meet all the required elements of the asserted claims.  Plaintiff

5   lacks evidence that any of the accused systems and processes:

6   - divulge the global location to a caller as required for claim 1 of the

7       '159 patent;

8   - have performed all of the steps of the method of claim 11 of the '461

9       patent;

10   - continuously tracks as recited in claims 1, 2 and 23 of the '461 patent;

11   - maintain a first and second profile as required by claim 28 of the '461

12       patent;

13   - have the ability "to deny . . . said establish location information . . .

14       during a period of time" as set forth in claim 25 of the '461 patent;

15   - have the ability (as a CDMA mobile phone) to establish its global

16       position as recited in claims 1, 2, 25 and 28 of the '461 patent.

17   • Defendants are not liable for inducing infringement of others; in addition to

18   the missing element of direct infringement by another, Plaintiff lacks any

19   evidence that Defendants possessed the required specific intent.

20   • Defendants are not liable for contributory infringement because neither the

21   accused network services nor the sale of cell phones supports this claim as a

22   matter of law.

23   **II.   BACKGROUND**

24   **A.   Two Related Patents Are at Issue in This Lawsuit.**

25   Plaintiff has asserted two patents in this suit.  The first patent, the '159 patent

26   issued on June 29, 1999.  The second patent, the '461 patent, is a continuation-in-

27   part of the '159 patent.

28   /////

2

CASE NO.  CV 06-5306-RSWL (SHX)

1    The essence of the '159 and '461 patented system is a paging system, which

2    tracks the location of the subscriber in order to efficiently route pages to the precise

3    area of the subscriber.  As a result of having the current location of the subscriber,

4    the system is able to provide a location reporting service in which a caller sending a

5    page can obtain the location of the subscriber being paged.  [159: col. 1, ll. 55-630.

6    This location reporting feature is optional by virtue of whether the subscriber

7    activates the "position disclosure feature" for the account.  When the feature is

8    active, privacy of the subscriber's location is provided by requiring a caller

9    requesting the location to provide the current "Special Code" (e.g. PIN code), for

10   the pager.  In other instances, when the feature is not active, the paging system will

11   not provide the subscriber's location to callers.

12       **B.     The Accused Networks.**

13   Plaintiff accused two distinct networks of infringement:

14   The Nextel network is based on the Integrated Digital Enhanced Network

15   (iDEN); a mobile telecommunications technology developed by Motorola.  This

16   technology, based on time division multiple access (TDMA), uses speech

17   compression to provide users the benefits of a cellular telephone and a trunked

18   radio.  Plaintiff accuses this network of infringing both patents-in-suit.

19   The Sprint network is based on code division multiple access ("CDMA")

20   technology originally developed during World War II to make radio

21   communications difficult to detect.  This technology uses assigned codes to

22   scramble and spread multiple signals over a wide range of frequencies.  The signals

23   appear to be noise to anyone without the proper descramble code.  Plaintiff accuses

24   this network of infringing the '461 patent but not the '159 patent.

25   **III.   ARGUMENT**

26       **A.     Summary Judgment Standard.**

27   Summary judgment "shall be rendered forthwith" when "the pleadings,

28   depositions, answers to interrogatories, and admissions on file, together with the

3

1   affidavits, if any, show that there is no genuine issue as to any material fact and that

2   the moving party is entitled to a judgment as a matter of law."  Fed. R.

3   Civ. P. 56(c).

4        When the moving party does not bear the burden of proof, summary

5   judgment is warranted by demonstrating an absence of facts to support the non-

6   moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary

7   judgment must be granted if the party responding to the motion fails "to make a

8   sufficient showing on an essential element of her case with respect to which she has

9   the burden of proof."  *Id.* at 323.  "[A] complete failure of proof concerning an

10  essential element of the nonmoving party's case necessarily renders all other facts

11  immaterial."  *Id.* at 322-23.

12       **B.     Plaintiff Lacks Evidence to Support Its Allegations of Direct**

13  **Infringement.**

14       To demonstrate direct infringement, the patentee must show that the accused

15  device meets each claim limitation, either literally or under the doctrine of

16  equivalents.  *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*,

17  347 F.3d 1314, 1324 (Fed. Cir. 2003).  "Literal infringement requires that every

18  limitation of the patent claim be found in the accused device."  *General Mills, Inc.*

19  *v. Hunt-Wesson, Inc.,* 103 F.3d 978, 981 (Fed. Cir. 1997).  Infringement cannot

20  exist without each and every limitation of the asserted claim present in the accused

21  device or process.  *Planet Bingo, LLC v. GameTech Intern., Inc.*, 472 F.3d 1338,

22  1341 (Fed. Cir. 2006); *Hutchins v. Zoll Medical Corp.*, 492 F.3d 1377, 1380 (Fed.

23  Cir. 2007) (infringement requires that every element and limitation be embodied in

24  the accused product).  If not literally present, a finding of infringement under the

25  doctrine of equivalents is appropriate if the element of the accused device is

26  insubstantially different than the corresponding claim limitation, *e.g.*, if it performs

27  substantially the same function, in substantially the same way, to achieve

28  /////

4

1   substantially the same result.  *See Warner-Jenkinson v. Hilton Davis Chem. Co.*,

2   520 U.S. 17, 40 (1997).

3         **1.**    **Plaintiff Is Barred From Asserting Infringement Under the**

4   **Doctrine of Equivalents.**

5         Plaintiff cannot maintain any infringement allegations under the doctrine of

6   equivalents for two reasons:  (1) Plaintiff is barred as a matter of law from asserting

7   infringement under the doctrine of equivalents based upon the doctrine of

8   prosecution history estoppel; and (2) even if this bar did not exist, Plaintiff has no

9   evidence that any of the accused networks and services infringe under the doctrine

10  of equivalents.

11        **a.**    **Plaintiff Surrendered All Rights to Equivalents**

12  **During the Prosecution of the Patents.**

13        The doctrine of prosecution history estoppel dictates that where subject

14  matter was surrendered during prosecution of the patent, this surrender generally

15  bars or at least constrains the patentee from asserting that an accused product or

16  service infringes as an "equivalent" to what is recited within the claims.  *Festo*

17  *Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 1377 (Fed.

18  Cir. 2007); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S.

19  722, 740 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520

20  U.S. 17, 33 (1997).  When a patentee makes narrowing amendments to the claims

21  during prosecution this gives rise to a presumption that all subject matter, *e.g.*, all

22  equivalents between the original claim and its narrowed scope, is beyond the reach

23  of the patentee.  *Id.*

24        In the instant case, the applicants made extensive narrowing amendments to

25  the claims during the prosecution of the applications that resulted in the '159 patent

26  and the '461 patent.  These extensive amendments surrendered all possible

27  equivalents and thus limit the claims to only their literal language.

28  /////

1   With regard to the '159 patent, asserted claim 1 was not even part of the

2   originally submitted application 08/905/674.  (SUF 6.)  Instead, on September 16,

3   1998, in response to a rejection from the USPTO rejecting all of the original claims

4   (SUF 5), the applicants redrafted claim 1 as a new claim and added new limitations.

5   (SUF 6.)  Applicants added such limitations "to clearly distinguish applicants

6   invention over the cited prior art."  (SUF 7.)  Hence, by narrowing claim 1 to

7   distinguish over prior art, claim 1 surrendered all equivalents.  *See Mycogen Plant*

8   *Science, Inc. and Agrigenetics, Inc. v. Monsanto Co.*, 261 F.3d 1345, 1350 (Fed.

9   Cir. 2001) (new claim added during prosecution to replace rejected claim assumes

10   the presumption of a narrowing amendment).

11   Narrowing amendments made during the prosecution of the '461 patent also

12   bar the application of the doctrine of equivalents to the claims of the '461 patent.

13   During the prosecution of the '461 patent, applicants added several of the asserted

14   claims after the original application was filed and then heavily modified these

15   claims for reasons of patentability.  In claim 1, with the exception of the first

16   element reciting a network of signal transmitting and receiving units, every element

17   of the claim was amended in prosecution to overcome rejections related to

18   patentability.  (SUF 10, 12, 14, 16, 19.)  The claim was amended to distinguish over

19   two anticipating references and then amended at least twice in an attempt to

20   overcome obviousness rejections.  (SUF 9-16.)  The result was a much narrowed

21   claim 1 with limitations that were not present in the originally filed claim.

22   (SUF 17, 19.)  Claim 2 issued as a claim dependent from claim 1, thus

23   incorporating all of the same limitations as claim 1.  (SUF 18.)

24   Similarly, the applicants amended claim 11 to overcome patentability

25   rejections for obviousness.  (SUF 20, 22, 24, 26.)  Claim 11 as issued contains

26   several limitations that were not present in the claim as originally filed, thus

27   narrowing the scope of the issued claim.  (SUF 20.)  The applicants also amended

28   /////

1   claim 23 in prosecution to distinguish over the prior art by adding two narrowing

2   limitations.  (SUF 27-32.)

3        The applicants did not include claim 25 in the original application; the

4   applicants added the claim during prosecution on August 8, 2001.  (SUF 33-34.)

5   The applicants then further amended this claim, similar to its amendments made to

6   claims 1 and 11, to distinguish over the prior art.  (SUF 35-37.)  These amendments

7   included the addition of "preauthorized" and "continuously tracking."  (*Id.*)

8        The applicants added claim 28 later in the prosecution on July 23, 2002.

9   (SUF 38-39.)  Although this claim itself was not amended in the prosecution that

10  followed, it incorporated all of the limitations that applicants had necessarily

11  incorporated into the other pending claims to overcome rejections over the prior art.

12  (SUF 40-41.)  Hence, claim 28 incorporates all the narrowing limitations and the

13  prosecution history estoppel of the other claims that bear these elements.  *See*

14  *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007) ("once an

15  argument is made regarding a claim term so as to create an estoppel, the estoppel

16  will apply to that term in other claims.")

17       In sum, the extensive number of claims added in an attempt to identify

18  patentable subject matter over the examiner's rejections, as well as the numerous

19  and extensive amendments made to overcome patentability rejections, give rise to

20  the presumption that these amendments were all made for reasons of patentability.

21  Accordingly, the claims of the asserted patents are not entitled to any latitude under

22  the doctrine of equivalents.  Hence, to the extent Enovsys' strives to prove

23  infringement against Defendants' accused products and services, it may only do so

24  if it can prove strict literal infringement, *i.e.*, an exact one-to-one correspondence

25  between the elements as literally set out in the claims and the features of the

26  accused products and services.  Prosecution history estoppel bars the Plaintiff from

27  pursuing any infringement theories under the doctrine of equivalents.

28  /////

7

**b.      Even if Any Latitude Were Available Under the Doctrine of Equivalents, Plaintiff Has No Evidence That the Accused Products and Services Infringe Under This Theory.**

Furthermore, even if any scope were available for Enovsys to assert the doctrine of equivalents, Enovsys lacks any evidence of infringement of the claims in this manner.  As Plaintiff admits in its interrogatory responses, it has no evidence, or even theories, of how the accused products and services infringe under the doctrine of equivalents: "[w]ithout knowing if or how the Defendants contend that their systems or actions fail to met [sic] each element of the asserted claims, Enovsys cannot provide an analysis under the doctrine of equivalents to address any alleged differences between the elements of the claims and the accused systems and acts."  (SUF 42-43.)

Enovsys' response incorrectly attempts to shift the burden of proof.  The burden of proving infringement rests with Plaintiff.  Accordingly, if Plaintiff had any theory and evidence of how Defendants infringe under the doctrine of equivalents, it remains with Plaintiff to bring forward such allegations and underlying evidence.  Its admissions indicate that Enovsys has no evidence or even argument as to how Defendants infringe under the doctrine of equivalents.

Therefore, both because prosecution history estoppel bars the use of the doctrine of equivalents and because even without such a bar, Plaintiff has no evidence that Defendants infringe under the doctrine of equivalents, Plaintiff must be limited to proving literal infringement of the asserted claims.  Accordingly, as a matter of law, summary judgment of no infringement of the '159 patent and the '461 patent under the doctrine of equivalents is warranted.

/////

/////

/////

/////

8

**2.     Defendants Are Not Liable for Infringement of the '159 Patent Because No Accused System Satisfies Each Element of the Asserted Claims.**

Plaintiff alleges that Nextel's iDEN network infringes Claim 1 of the '159 patent. (SUF 46, 49.)  To literally infringe, the iDEN network must meet each and every element of the claim.  *See General Mills, Inc. v. Hunt-Wesson, Inc.,* 103 F.3d 978, 981 (Fed. Cir. 1997).  However, the iDEN network does not meet each and every element of claim 1.  The claim is expressly directed to "a <u>satellite paging</u> communications system." (SUF 17.)  The claimed system transmits paging information from space satellites.  Plaintiff has no evidence that the iDEN network has such a capability.  (SUF 44.)  In fact, Plaintiff does not even contend that the iDEN network has this feature  - it only claims that the phones can receive paging information; no satellite origin of such paging information is even alleged.  (*Id.*)  Thus, the absence of evidence that the accused iDEN network meets this required limitation of claim 1, compels entry summary judgment of non-infringement for claim 1 of the '159 patent.

**3.     Plaintiff Has Limited Its Infringement Allegations to "Network Initiated Location Requests."**

In response to interrogatories concerning its infringement contentions, Plaintiff specified that its infringement allegations rested on the use of the iDEN and CDMA platforms  "in the context of "network-initiated location requests." (SUF 46-47.)  Thus, Plaintiff specifically limited its asserted theory of infringement to "network-initiated location requests" for the sole asserted claim of the '159 patent (claim 1) and for claims 1, 11 and 23 of the '461 patent.  Therefore, Plaintiff may not pursue other theories of direct infringement of these claims such as user-initiated requests.  Accordingly, Defendants request summary adjudication of no infringement by any non-network initiated location request for claim 1 of the '159 patent and claims 1, 11 and 23 of the '461 patent.

9

1    Additionally, summary judgment of no infringement under any non-network-

2    initiated location request is proper for all of the asserted claims based on a lack of

3    evidence.  Plaintiff has no evidence that any non-network initiated location request

4    meets each and every limitation of the asserted claims.  Plaintiff must show that

5    every limitation is met for that type of location requests; if even one limitation is

6    missing there is no infringement.  *See MicroStrategy Inc. v. Business Objects, S.A.*,

7    429 F.3d 1344, 1352 (Fed. Cir. 2005) ("If, however, even one claim limitation is

8    missing or not met, there is no literal infringement.").  Therefore, Defendants

9    request summary adjudication of no direct infringement based upon any non-

10   network initiated location requests.

11   **C.    Plaintiff Lacks Any Evidence Of Direct Infringement That Would**

12   **Support Its Claims of Indirect Infringement.**

13   Although Plaintiff has alleged that Defendants both induce others to infringe

14   the patents-in-suit and contribute to the infringement by others, Plaintiff lacks

15   evidence for either of these bases of infringement.  Without such evidence Plaintiff

16   cannot, as a matter of law, prove infringement of either of the patents-in-suit.

17   *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308 (quoting *Celotex*,

18   477 U.S. at 325) ("[T]he burden on the moving party may be discharged by

19   'showing' – that is, pointing out to the district court – that there is an absence of

20   evidence to support the nonmoving party's case.").  Accordingly, the Court should

21   summarily adjudicate Plaintiff's infringement claims on the patents-in-suit.

22   **1.    Plaintiff Lacks Evidence of Any Direct Infringement by**

23   **Others That Would Support a Claim of Indirect Infringement.**

24   "Indirect infringement, whether inducement to infringe or contributory

25   infringement, can only arise in the presence of direct infringement."  *Dynacore*

26   *Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004); *Joy*

27   *Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993).  The direct infringer

28   must be someone other than the defendant (i.e. a defendant must induce or

10

contribute to someone else's infringement).  *Id.  BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) ("Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement.").

Here, however, Plaintiff has presented no evidence that any other person or entity directly infringes the asserted claims of either the '159 or the '461 patent. Plaintiff's interrogatory responses hypothesize that, "[t]o the extent . . . entities or persons other than the Defendants (i.e., developers, providers, and other users of location based services for the Defendants' iDEN and CDMA networks and devices) are deemed by the Court or a jury to be the direct infringers of the asserted claims," the Defendants are liable for indirect infringement.  (SUF 48-53.)

Plaintiff puts the proverbial cart before the horse.  It is *Plaintiff's* burden to *prove* infringement, and in response to discovery requests it was *Plaintiff's* obligation to come forward with evidence supporting its indirect infringement allegations.  Plaintiff fell far short of its obligations.  It has not named any specific users or specific developers that have directly infringed.  (*Id.*)  Nor has Plaintiff shown how any of these unnamed users or developers infringe each asserted claim of the patents-in-suit.  (*Id.*)  Any theories Plaintiff has put forward of direct infringement relate to practices of the Defendants; Defendants can not be liable for inducing or contributing to their own acts of direct infringement.  *See BMC Resources,* 498 F.3d at 1378.  Absent element-by-element, claim-by-claim analysis of how another party directly infringes, Plaintiff's allegations of indirect evidence cannot stand; summary judgment of no indirect infringement is therefore warranted.

**2.      The Acts Alleged by Plaintiff Fail to Demonstrate Direct Infringement of the Asserted Claims.**

Plaintiff has accused the Sprint CDMA network of infringing only the '461 Patent, and the Nextel iDEN network of infringement both the '461 and '159 Patents.  (SUF 54-55.)  However, those allegations fail to cite evidence

11

1   demonstrating direct infringement of the asserted claims.  That is, each asserted

2   claim contains at least one limitation for which Plaintiff has no evidence that the

3   accused networks incorporate or practice this feature.  Absent such evidence,

4   Plaintiff cannot demonstrate an act of direct infringement which necessarily

5   underlies a claim for indirect infringement.  *BMC Resources, Inc. v. Paymentech,*

6   *L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) ("Indirect infringement requires, as a

7   predicate, a finding that some party amongst the accused actors has committed the

8   entire act of direct infringement."); *Deering Precision Instruments, L.L.C. v. Vector*

9   *Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003) (to prove infringement one

10  must show each and every limitation of the asserted claim is met).

11              **a.       For the '159 Patent, Claim 1, the Accused Nextel iDEN**

12  **Network Is Not a "Satellite Paging Communications System."**

13          As set out in Section B.2, the accused iDEN network does not directly

14  infringe claim 1 of the '159 patent.  Hence, any theories of indirect infringement

15  premised on an act of direct infringement of the '159 patent by the iDEN network

16  cannot stand.  Summary judgment of no indirect infringement by the iDEN network

17  is warranted.

18              **b.       The Accused Nextel iDEN Network Does Not Satisfy**

19  **"the System Divulging to Certain or All Callers . . . While Blocking Such**

20  **Information From Being Divulged to Certain or All Other Callers" as**

21  **Required for Claim 1 of the '159 Patent.**

22          The final element of claim 1 of the '159 patent requires "the system

23  divulging to certain or all callers the global location of a callee in possession of the

24  said call receiver while blocking such information from being divulged to certain or

25  all other callers."  This claim element requires the system to perform (or have the

26  capability to perform) all of the specified combinations of divulging and blocking:

27  /////

28  /////

12

1        Divulge to <u>certain</u> callers while blocking <u>certain</u> callers;

2        Divulge to <u>certain</u> callers while blocking <u>all</u> callers;

3        Divulge to <u>all</u> callers while blocking <u>certain</u> callers; and

4        Divulge to <u>all</u> callers while blocking <u>all</u> callers.

5    (SUF 17.)

6        Enovsys has no evidence that the accused iDEN network performs (or even is

7    capable of performing) all of these permutations.  Moreover, it is not even logically

8    possible for the accused network to perform all of these permutations – the network

9    cannot divulge to <u>all</u> callers and yet at the same time block <u>certain</u> callers.

10   Therefore, the absent evidence that the accused network meets this limitation of

11   claim 1 there is no evidence of direct infringement to support Plaintiff's claim of

12   indirect infringement; summary judgment of no indirect infringement is thus

13   warranted.

14            **c.      No Evidence Exists That an Accused System Divulges**

15   **the Global Location to a Caller.**

16       Claim 1 of the '159 Patent recites, in part, "the system divulging to certain or

17   all callers the global location . . ."  (SUF 58.)  As will be further briefed by

18   Defendants in their opposition brief regarding claim construction,[1] a "caller" is "the

19   person that places a telephone call to the paging system requesting the global

20   position of the call receiver."  (SUF 59-61.)  Enovsys' infringement contentions do

21   not include any such "caller" and there is no evidence to show that the accused

22   system can divulge the global location to a "caller," as properly construed.

23   (SUF 62.)  Therefore, Plaintiff has no evidence to show Defendants literally

24   infringe this element, and hence summary judgment of no infringement of claim 1

25   of the '159 patent is warranted.

26   /////

27

28   ────────────────
     [1] Defendants' opposition brief will be filed with the Court on January 23, 2008.

**d.      No Evidence Exists That Any Step of Claim 11 of the '461 Patent Has Ever Been Performed.**

Claim 11 recites a method claim, which can be infringed only when every step is performed.  *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("A method claim is directly infringed only by one practicing the patented method.").

Claim 11 recites:[2]

> 11. A method for divulging or blocking the location information of a mobile remote receiving unit associated with a network comprising:
>
> i) receiving a request at the network for location information of the mobile remote receiving unit;
>
> ii) identifying the source of request;
>
> iv) verifying that the source of request is pre-authorized to access location information of the mobile remote receiving unit at the network;
>
> v) querying at the network for [a] location information disclosure instruction for the mobile remote receiving unit; [and]
>
> vi) using said instruction (v) to allow or block mobile remote receiving unit location information to the pre-authorized source of request.

(SUF 20.)

Enovsys has adduced no evidence that any one of the above steps has ever been performed, much less every step.  Assuming, *arguendo*, there is evidence that a system *could* perform each of these steps, which there is not, such evidence is insufficient to support a finding of infringement based on a method claim.  *ACCO*

---

[2] Note that claim 11 as issued does not have an element "iii" but jumps from element "ii" to "iv."

1   *Brands, Inc. v. ABA Locks Mfrs. Co.*, Ltd., 501 F.3d 1307, 1313 (Fed. Cir. 2007)

2   ("Hypothetical instances of direct infringement are insufficient to establish . . .

3   indirect infringement.").  Infringement based on a method claim must be supported

4   by proof that someone, or some entity, actually performed every step of the method

5   or that the accused systems necessarily infringe the claim.  *Id.*  Expert opinions,

6   inferences, and suppositions that someone could possibly perform the method will

7   not suffice.  *Id.*

8       In addition to Enovsys' failure to obtain evidence of performance, Enovsys

9   has no evidence that an accused system even has the ability to perform these steps

10  (let alone necessarily performs these steps).  In particular, claim 11 requires two

11  privacy checks before the system allows a source to access the location information

12  for a particular mobile remote receiving unit.  The first privacy check is in the

13  verifying step.  The second privacy check is in the querying and using steps.  As

14  pointed out in more detail below, Enovsys has no evidence that any accused system

15  is set up to perform both of these privacy checks.

16      Faced with this lack of evidence, Enovsys attempts to allege the process of

17  restricting access to the network as the first privacy check.  (SUF 64.)  This, of

18  course, fails because the *verify* step requires more than just making sure the source

19  of the request has permission to interact with the network; it requires verifying the

20  source is "pre-authorized" to access the location information for *a particular*

21  mobile remote receiving unit.  In the process of *verifying that the source of request*

22  *is pre-authorized* the system must utilize the identity, in some form at least, of the

23  source of the request and the mobile remote receiving unit.  Otherwise, how else

24  could the source of a request be verified as being pre-authorized to access

25  information a particular mobile remote receiving unit?

26      The importance of this limitation becomes clear when the remainder of

27  Enovsys' assertions regarding the steps of *querying* and *using* is investigated.

28  According to Enovsys, if a request for the location of a mobile unit is received by

15

1   the Defendants' network, the network would then determine if the source of the

2   request has been authorized (by the subscriber of the mobile unit in question) to

3   access the location of the identified mobile remote receiving unit.  (SUF 65-66.)  If

4   anything, such action relates to the *verifying* step—not the *querying . . . for location*

5   *information disclosure instruction* and the *using* steps.  No matter how hard

6   Enovsys tries to shift the facts, there is no evidence that accused system is capable

7   of performing each of the claimed steps, much less evidence that the steps have

8   ever been performed.

9           **e.**    **No Evidence Exists That Either Accused System**

10   **"Continuously Tracks" as Recited in Claims 1, 2 and 23 of the '461 Patent.**

11         Claims 1 recites, in part:  ". . . the location of the mobile remote unit is

12   <u>continuously tracked</u> during the time that the location is being denied to said

13   network resource . . ."  (SUF 67.)  Claim 2 depends from claim 1 and thus

14   also incorporates this limitation.  (SUF 18.)

15         Claim 23 recites, in part: ". . .the location of the mobile remote unit is

16   <u>continuously being tracked</u> by the system . . ." (SUF 68.)

17         While the parties dispute the meaning of "pre-authorized" and "continuously

18   tracking", no claim construction is necessary to demonstrate Enovsys has no

19   evidence of infringement for Claims 1, 2 and 23.

20         Claim 23 recites simply that the mobile remote unit is continuously tracked,

21   *i.e.*, that it is tracked *all of the time*.  Claim 1 essentially recites the same limitation

22   although the wording is different.  From the face of the claims, Claim 1 requires the

23   system to continuously track the mobile remote unit "during the time that the

24   location is being denied to said network resource."  According to Enovsys, E911

25   and every network-initiated location based service is "pre-authorized."

26   (SUF 69-70.)  If one "pre-authorized" service is being provided the location

27   information, then the location is being tracked for that instant.  If the service is not

28   being provided the location information, it is being denied the location information.

16

CASE NO.  CV 06-5306-RSWL (SHX)

For a system to satisfy both conditions, the location of the mobile unit must be continuously tracked.  Hence, logically, the "time" for continuously tracking, like claim 23, must be *all of the time*.

Enovsys, however, has adduced no evidence that the accused systems or services continuously track the mobile remote unit *all of the time* as required by Claims 1 and 23.  Absent this feature, there is no direct infringement of these claims.

### f.    There Is No Evidence That an Accused System Maintains a First and Second Profile as Recited in Claim 28 of the '461 Patent.

One of the elements of claim 28 requires that the system maintain a profile with at least three types of information (as shown below by underlining):

> wherein at least a profile is maintained by the system, <u>said profile, containing the identity of a preauthorized resource, identity of the first communication resource and a location access field</u> . . . ;

(SUF 71.)

Enovsys, however, has failed to adduce any evidence that the accused systems and services maintain a profile that that includes all three types of information as required by the claim.

Furthermore, claim 28 requires not just one profile of this nature, but two:

> the system able to use the location access field of <u>a first profile</u> to deny the location information of the first communication resource to the preauthorized resource identified in said first profile while allowing another preauthorized resource identified in <u>a second profile</u> to access the location information of the first communication resource . . . .

(SUF 72.)

Enovsys also has no evidence that the accused systems maintain two profiles both of which contain all three types of information for a particular mobile unit.

17

1    Absent evidence of these required feature, there is no direct infringement of these

2    claims.

3            **g.      There Is No Evidence That an Accused Mobile Remote**

4    **Unit Has the Ability to Deny . . . Said Establish Location Information . . .**

5    **During a Period of Time as Recited in Claim 25 of the '461 Patent.**

6            Claim 25 recites in part:

7            the mobile remote unit able to deny the provision of said establish

8            mobile remote unit location information to a pre-authorized

9            communication resource selected from the network of pre-authorized

10           communication resources during a period time when access to mobile

11           remote unit location information has been granted to another

12           preauthorized communication resource at the network.

13    (SUF 73.)

14           This element of the claim requires the mobile establish its location at the

15    network, so that the network has the location of the mobile unit.  (SUF 74-75.)  It

16    then requires the mobile unit to prevent a "pre-authorized" source from getting the

17    information.  (SUF 76-77.)  In other words, the phone must *prohibit the network*

18    from furnishing location information to the preauthorized source.

19           Enovsys has adduced no evidence that the accused cell phones can *prohibit*

20    *the network* from giving out location information.  Instead, Enovsys asserts that the

21    *phone* will not provide its location during particular periods of time. (SUF 78-79.)

22    This, however, is not what the claim requires.  Therefore, absent evidence to satisfy

23    this essential claim element, there can be no direct infringement of claim 28.

24    /////

25    /////

26    /////

27    /////

28    /////

1               **h.**      **There Is No Evidence That Any Accused CDMA**

2   **Mobile Phone Has the Ability to Resolve a Global Position or the Ability to**

3   **Establish Its Global Position at the Network as Recited Claims 1, 2, 25, and 28**

4   **of the '461 Patent.**

5           Claims 1, 2, 25 and 28 all include an element which requires the mobile

6   remote unit able to establish its location information at the network.  (SUF 80-82.)

7   In other words, the phone must be able to transmit its global position to the network

8   and therefore, must be able to establish its own location, in order to then transmit

9   the information.  (SUF 83-84.)

10          Enovsys has no evidence that any of the accused CDMA mobile phones work

11   in this manner.  (SUF 85.)  Therefore, these accused devices do not satisfy every

12   element of claims 1, 25 and 28 and hence, there is no direct infringement of these

13   claims.

14            **D.**     **Plaintiff Lacks Any Evidence That Defendants Induced**

15   **Infringement of Any of the Asserted Claims.**

16          In addition to requiring an act of direct infringement by another (addressed in

17   detail above in sections C.1 and C.2), to prevail on a claim of inducing

18   infringement, the plaintiff bears the burden to show that a defendant "knowingly

19   induced infringement with the intent to encourage the infringement," "intended to

20   cause the acts that constitute the direct infringement," and knew or should have

21   known that "its action would cause the direct infringement."  *DSU Medical Corp. v.*

22   *JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).  "The mere knowledge of

23   possible infringement by others does not amount to inducement; specific intent and

24   action to induce infringement must be proven."  *Id.*

25          Plaintiff cannot demonstrate that Defendants' conduct meets this high

26   culpability standard.  Plaintiff cannot identify <u>which</u> acts of infringement

27   Defendants encouraged, specifically <u>how</u> Defendants encouraged these acts, or that

28   Defendants <u>knew of and intended to encourage</u> such infringing acts.

19

                                  

First, to prove inducing infringement, a plaintiff must establish specific evidence of specific acts of direct infringement or show the accused product necessarily infringes. *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, Ltd., 501 F.3d 1307, 1313 (Fed. Cir. 2007)  Here, as explained in Section C.1, Plaintiff has no evidence of any instances of direct infringement by another person or entity. Without identification of any specific acts, how can there be any evidence that Defendants encouraged such unidentified acts?

Furthermore, Plaintiff has no evidence that the accused systems as used by others necessarily infringe the claims of the patents-in-suit.  To do so, Plaintiff must demonstrate that the accused systems as used by others cannot be used in a non-infringing manner. *See id.* (lock sold by defendant could be used by customer in a non-infringing or an infringing manner, therefore it did not necessarily infringe the claimed locking system).  Plaintiff has put forward no evidence on this point.

Next, Plaintiff can not show *how* Defendants encouraged infringement. In its interrogatory responses, Plaintiff points only to Defendants' purported encouragement of location based services (LBS) by providing a network which supports LBS and which is accessed by users and developers.  (SUF 86-90.)  This evidence fails to establish that the availability of the iDEN and CDMA networks encouraged others to infringe the claims of the patent.  Again, without any identification of which acts of others even constitute infringement, Plaintiff cannot establish a causal connection between the presence of the networks and the encouragement of infringing acts.

Finally, evidence that a defendant knew of another's activities is not enough; defendant must have "knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU*, 471 F.3d at 1306.  Here, Plaintiff has no evidence to show Defendants' specific intent.  Plaintiff has no evidence that Defendants knew others were using the accused system in an infringing manner. Nor does it have any evidence that Defendants specifically intended others to use

20

1    the accused systems in an infringing manner.  Showing that Defendants intended

2    others to use the iDEN and CDMA networks without more is insufficient.

3    (SUF 86-90.)  Plaintiff must present evidence that Defendants intended others to

4    make, use or sell these networks in an infringing manner.

5           Therefore, because Plaintiff has no evidence for at least three required

6    elements of inducing infringement, Defendants request summary judgment of no

7    inducing infringement with respect to the '159 patent and the '461 patent.

8           **E.     Plaintiff Has No Evidence of Contributory Infringement by**

9    **Defendants.**

10          A contributory infringer is defined by section 271(c) of the Patent Act as one

11   who "offers to sell or sells or imports into the United States . . . a component . . .

12   constituting a material part of the invention, knowing the same to be especially

13   made or especially adapted for use in the infringement of such patent, and not a

14   staple article or commodity of commerce suitable for substantial noninfringing

15   use. . . ."  35 U.S.C. § 271(c) (West 2007).

16          Plaintiff has no evidence to meet these required elements of contributory

17   infringement.  First, like infringement by inducement, contributory infringement

18   requires proof of direct infringement.  *DSU Medical Corp. v. JMS Co.*, Ltd., 471

19   F.3d 1293, 1303 (Fed. Cir. 2006); *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770,

20   774 (Fed. Cir. 1993).  As explained above, Plaintiff has no evidence that any other

21   person or entity practiced the asserted claims of the patents-in-suit.

22          Second, Plaintiff cannot rest its allegations of contributory infringement on

23   any services sold or provided by Defendants.  Services cannot provide a basis for a

24   claim of contributory infringement under 35 U.S.C. § 271(c):

25          Although that language ["offers to sell and sells" in Section 271(c)]

26          describes in various different ways the items that may be sold for

27          purposes of creating liability for contributory infringement, all of the

28          descriptions refer to the sale of a product of some sort; none of them

                                          21

1      refer to the provision of a service. Under the plain language of the

2      statute, a person who provides a service that assists another in

3      committing patent infringement may be subject to liability under

4      section 271(b) for active inducement of infringement, but not under

5      section 271(c) for contributory infringement.

6  *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1356 (Fed. Cir.

7  2007).

8      According to Plaintiff's contributory infringement allegations, Defendants

9  provide location access platforms – the iDEN and CDMA networks.  (SUF 91-92.)

10  Enovsys has not alleged that Defendants sell or offer to sell these networks; instead

11  Enovsys has accused the Defendants of providing a *service* - access its networks.

12  (*Id.*)  This service cannot provide the basis for a claim of contributory infringement.

13  *PharmaStem*, 491 F.3d at 1356.

14      Third, Plaintiff cannot show that the cell phones sold by Defendants do not

15  constitute "a staple article or commodity of commerce suitable for substantial

16  noninfringing use."  Cell phones have many uses, primarily for calling and

17  receiving calls from others.  (SUF 93)  Such uses have nothing to do with location

18  information and hence constitute a substantial noninfringing use, now and for many

19  years prior to the filing of the patents-in-suit.

20      Moreover, even cell phones with GPS or other means of receiving or

21  transmitting their location, have substantial noninfringing uses.  (SUF 94.)  Most

22  telling on this point is the availability of such devices well before the issuance of

23  either of the patents-in-suit.  For example, U.S. Patent No. 5,388,147 issued in

24  1995, before either of the patents-in-suit was filed, describes cellular telephones

25  that transmit geo-positioning coordinates to a cellular network.  (SUF 95-99.)  It

26  also describes the use of these phones with the 911 emergency services such as fire,

27  police and rescue departments.  (SUF 96, 98.)  Use of a cell phone in the manner

28  described in this 1995 patent is therefore an example of a substantial noninfringing

22

                                     

1   use.  Another example is set out in the patent prosecution history for the '159

2   patent -- the patentee admitted therein that one of the references cited by the

3   examiner, Schuchman, employed cellular telephones to resolve local position.

4   (SUF 100-101.)  Thus by the patentee's own admission, Schuchman proves a

5   substantial non-infringing use.[3]

6          In sum, Plaintiff has no evidence to show that Defendants' conduct meets all

7   of the required elements for contributory infringement.  Accordingly, Defendants

8   request summary judgment of no contributory infringement of the '159 patent and

9   the '461 patent.

10  **IV.   CONCLUSION**

11         Defendants urge the Court to grant summary adjudication as follows:

12         • Defendants are not liable for infringement of the '159 patent or the

13            '461 patent under the doctrine of equivalents;

14         • Defendants' iDEN network does not literally infringe the '159 patent;

15         • Defendants do not infringe the '159 patent or the '461 patent based on

16            systems, services, and activities unassociated with "network-initiated

17            location requests"

18         • Defendants are not liable for either form of indirect infringement -

19            inducing infringement of others or contributory infringement.

20         Plaintiff has created a goliath lawsuit that never should have existed.  Despite

21  the extensive and costly document and deposition discovery in this case, Plaintiff

22  lacks evidence of essential elements to demonstrate infringement.  Defendants urge

23  the Court to evaluate the merits of Plaintiff's infringement case under the strict

24  standard set forth in  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  When looked

25

26  [3] To the extent Enovsys argues the phones employed in the prior art infringe, it
    necessarily follows that the patents-in-suit are invalid.  "[T]hat which would
27  literally infringe if later in time anticipates if earlier."  *Schering Corp. v. Geneva
    Pharmaceuticals*, 339 F.3d 1373, 1379 (Fed. Cir. 2003).
28

1    at closely, the undisputed proof establishes that Plaintiff cannot prove infringement

2    on the matters challenged in this motion.

3

4    Dated:  December 28, 2007

                                    DLA PIPER US LLP
5

6                                   By:    /s/ Randall E. Kay
                                    JOHN ALLCOCK (Bar No. 098895)
7                                   RANDALL E. KAY (Bar No. 149369)
                                    ERICA J. PASCAL (Bar No. 248677)
8                                   DLA PIPER US LLP
                                    401 B Street, Suite 1700
9                                   San Diego, CA  92101-4297
                                    Tel:  619.699.2800
10                                   Fax:  619.699.2701
                                    john.allcock@dlapiper.com
11                                   randy.kay@dlapiper.com

12                                   RAYMOND W. MORT III
                                    (admitted pro hac vice, TX Bar No. 00791308)
13                                   DLA PIPER US LLP
                                    1221 South MoPac Expressway, Suite 400
14                                   Austin, TX 78746
                                    Tel:  (512) 457-7234
15                                   Fax:  (512) 457-7001
                                    raymond.mort@dlapiper.com
16
                                    Attorneys for Defendants/Counterclaimants
17                                   NEXTEL COMMUNICATIONS, INC., et al

18

19

20

21

22

23

24

25

26

27

28

SD\1777973.3                                              CASE NO.  CV 06-5306-RSWL (SHX)