1    Gregory S. Dovel (State Bar No. 135387)
2    greg@dovellaw.com
     Jeff Eichmann (State Bar No. 227472)
3    jeff@dovellaw.com
4    DOVEL & LUNER, LLP
     201 Santa Monica Blvd., Suite 600
5    Santa Monica, California 90401
6    (310) 656-7066
     (310) 656-7069 fax
7
8    Attorneys for Plaintiff and Counterdefendant
     Enovsys LLC

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                    WESTERN DIVISION

12
     Enovsys LLC,                    Case No. CV 06-05306 RSWL (SHx)
13
14        Plaintiff/Counterclaim defendant,    **Plaintiff Enovsys' memorandum of points and authorities in opposition to Defendants' motion for summary judgment of non-infringement**
15   vs.
16
17   Nextel Communications, Inc., et al.,
18        Defendants/Counterclaimants.    Date:   February 14, 2008
19                                         Time:   9:00 a.m.
20                                         Place:  Courtroom 21, Spring Street
                                           Judge:  Hon. Ronald S.W. Lew
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    Introduction ...................................................................................................1

II.   Overview of Enovsys' infringement case ....................................................1

    A.    The patents ............................................................................................1

    B.    The accused systems .............................................................................2

    C.    Asserted claims and theories of infringement......................................3

III.  The Defendants directly infringe both patents .............................................3

    A.    Overview ...............................................................................................3

        1.    The law...........................................................................................3

        2.    Enovsys' evidence .........................................................................4

        3.    Defendants' arguments ..................................................................5

    B.    Infringement of Claim 1 of the '159 patent ..........................................9

        1.    Defendants' iDEN system meets all limitations of Claim 1...........9

        2.    Response to Defendants' arguments...............................................9

    C.    Infringement of Claim 1 of the '461 patent .........................................11

        1.    Defendants' iDEN and CDMA systems meet all limitations of Claim 1 ...............................................................................11

        2.    Response to Defendants' arguments.............................................12

    D.    Infringement of Claim 2 of the '461 patent .........................................13

    E.    Infringement of Claim 11 of the '461 patent .......................................13

        1.    Defendants' iDEN and CDMA systems meet all limitations of Claim 11 .............................................................................13

        2.    Response to Defendants' arguments.............................................14

    F.    Infringement of Claim 23 of the '461 patent .......................................15

        1.    Defendants' iDEN and CDMA systems meet all limitations of Claim 23 .............................................................................15

        2.    Response to Defendants' arguments.............................................15

    G.    Infringement of Claim 25 of the '461 patent .......................................16

        1.    Defendants' iDEN and CDMA systems meet all limitations of Claim 25 .............................................................................16

        2.    Response to Defendants' arguments.............................................17

H.    Infringement of Claim 28 of the '461 patent ........................................... 18

1.    Defendants' iDEN and CDMA systems meet all limitations of Claim 28 .................................................................................. 18

2.    Response to Defendants' arguments .............................................. 18

IV.   The Defendants have induced others' infringement of the system claims......... 19

A.    The law ...................................................................................... 19

B.    The Defendants' inducement ................................................. 20

C.    Defendants' arguments........................................................... 23

V.    Defendants' infringement is not limited to network-initiated LBS requests ..... 24

VI.   Conclusion ......................................................................................... 25

Plaintiff's opp. to non-infringement motion

1
2

# Table of authorities

3

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*,
    501 F.3d 1307(Fed. Cir. 2007).....................................................................24

*Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296 (Fed. Cir. 2005) ..........6

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*,
    145 F.3d 1303 (Fed. Cir. 1998)...................................................................23

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) .....................................19

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002)...........6, 7

*Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) ..........6

*Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377 (Fed. Cir. 2007) ......................................4

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed. Cir. 2005)...................................................................23

*Moleculon Research Corp. v. CBS, Inc.*,
    793 F.2d 1261 (Fed. Cir. 1986)...................................................................23

*Oak Industries, Inc. v. Zenith Electronics Corp.,* 726 F. Supp. 1525 (ND Ill. 1989) ...23

*Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304 (Fed. Cir. 2001) ......................4

*TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360 (Fed. Cir. 2002)...............................4

*Terlep v. Brinkmann Corp.*, 418 F.3d 1379 (Fed. Cir. 2005).........................................7

**Statutes**

35 U.S.C. § 102.............................................................................................19
35 U.S.C. § 271...........................................................................................3, 19

18
19
20
21
22
23
24
25
26
27
28

Plaintiff's opp. to non-infringement motion

## Memorandum in Opposition

(to non-infringement motion)

### I.      Introduction.

The Defendants move for summary judgment that they do not infringe the '159 and '461 patents.  The issues presented by their motion are:

1. Can Enovsys prove the Defendants directly infringe the patents?

2. Can Enovsys prove the Defendants indirectly infringe the patents?

3. Is Enovsys limited to proving infringement with respect to only one use of the Defendants' accused systems – what the parties refer to as "network-initiated" location requests?

Enovsys addresses each issue in turn below and demonstrates that there is substantial evidence the Defendants have directly and indirectly infringed the patents, and not just in the network-initiated context.

Accordingly, Defendants' motion must be denied.

### II.     Overview of Enovsys' infringement case.

#### A.      The patents.

Enovsys' patents claim inventions relating to the use of mobile devices and what are commonly referred to as location based services (LBS) - services used to locate mobile devices (*e.g.*, for tracking or navigation purposes) or to provide the device owner with information relating to his or her current location (*e.g.*, the names and locations of nearby stores, gas stations, restaurants, etc.).  More specifically, co-inventors Mundi Fomukong and Denzil Chesney not only foresaw the enormous benefit that such services would provide to family members, friends, and employers seeking to locate people, they also recognized that such services would raise substantial privacy concerns that would need to be addressed.  Accordingly, they developed a set of systems and methods that would allow the device operator to

safeguard his or her location information and effectuate preferences concerning who could see the location and when.  The inventions allow the user of a mobile device to obtain the precise location of his or her device, or share that location with one person, while simultaneously denying another person the ability to access the location - *i.e.*, the inventions provide a novel and efficient means for selective disclosure of location.

### B.   The accused systems.

The Defendants are the well known group of wireless service providers that provide cellular telephones, service plans and related wireless services under the Sprint and Nextel brands.  They have two systems that are accused of infringement:

(1)  the iDEN system, which consists of the Defendants' wireless iDEN network (the legacy cellular network originally provided by Nextel and now provided by Sprint Nextel (Sprint and Nextel merged in 2005)) and its constituent architecture – mobile devices, base stations, mobile switching centers (which route calls and messages), SMS centers (which send SMS messages), GPS satellites, the iDEN location platform (a set of servers and databases that process requests for the location of mobile devices), and the application servers associated with specific LBS applications (*i.e*, the applications that users sign up for); and

(2) the CDMA system, which consists of the Defendants' wireless CDMA network (the legacy cellular network originally provided by Sprint and now provided by Sprint Nextel) and its constituent architecture (which includes essentially the same components as the iDEN system articulated above).

Through these systems, the Defendants provide various location based services that allow Sprint and Nextel subscribers to determine their location and then share that location with others (such as friends and family) or use it to locate nearby points of interest (restaurants, etc.).  These systems are also widely used by corporate clients whose employees are out in the field making deliveries or providing other mobile services while their employers or supervisors are back at the office and able to track their whereabouts based on the location of the employee's mobile device.

Plaintiff's opp. to non-infringement motion

### C. Asserted claims and theories of infringement.

Enovsys asserts only Claim 1 of the '159 patent and only asserts that claim against the Nextel Defendants (those who provide and operate the iDEN system). Claim 1 is a system claim. Enovsys contends that the iDEN system meets all of the limitations of this claim and that the Nextel Defendants are liable for direct infringement because they use this system and offer and sell its use to subscribers.

Enovsys asserts Claims 1, 2, 11, 23, 25, and 28 of the '461 patent against all Defendants. Claim 11 is a method claim; the others are system claims. Enovsys contends that the Defendants' iDEN and CDMA systems meet all of the limitations of the system claims and that the Defendants are liable for direct infringement because they use this system and offer and sell its use to subscribers. Claim 11 is asserted because each step of the method claimed is performed by the Defendants in operating their accused systems.

Enovsys also asserts that the Defendants have induced infringement of the system claims (all asserted claims except Claim 11) by their customers and by providers of specific LBS applications.[1]

## III.   The Defendants directly infringe both patents.

### A. Overview.

#### 1. The law.

Under 35 U.S.C. §271(a): "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." To determine if there is infringement, the claims of the patents must first be construed, then they are applied to the accused product or method: "An infringement analysis is a two-step process in which we first determine the correct claim scope, and then compare the properly construed claim to the accused device to

---

[1] Enovsys no longer asserts contributory infringement.

Plaintiff's opp. to non-infringement motion

determine whether all of the claim limitations are present either literally or by a substantial equivalent," *TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002).  Infringement is only found where the accused system includes all limitations of the asserted claim or the accused method includes the performance of all steps of acclaimed method.  *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1380 (Fed. Cir. 2007) ("Patent infringement requires that every element and limitation in a correctly construed claim is embodied in the accused system either literally or, if embodied by an equivalent, in compliance with the rules of equivalency"); *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311 (Fed. Cir. 2001) ("Infringement arises when all of the steps of a claimed method are performed").

Thus to prove infringement of the asserted system claims, Enovsys must show that the Defendants either make, use, offer to sell, or sell a system that meets all limitations claimed.  (As mentioned above, Enovsys proceeds under the theory that the Defendants' use, offer for sale, and sale of the accused iDEN and CDMA systems constitute direct infringement).  And to prove infringement of the method of Claim 11, Enovsys must show that the Defendants perform all steps of that method.  (As mentioned above, Enovsys proceeds under the theory that the Defendants perform the steps of Claim 11 in operating their accused systems).

### 2.    Enovsys' evidence.

The Defendants' documents describing the configuration and use of the accused iDEN and CDMA systems, and the testimony of their technical witnesses, clearly demonstrates the Defendants' infringement.  This evidence has been analyzed by Enovsys' technical expert, Christopher Rose, Ph.D., a professor and associate director of the Wireless Information Network Laboratory at Rutgers University and a former member of the technical staff at AT&T Bell Laboratories.  Dr. Rose opines that the Defendants' iDEN system meets the limitations of Claim 1 of the '159 patent and that both the iDEN and CDMA systems meet the limitations of Claims 1, 2, 23, 25 and 28 of the '461 patent.  In addition, he concludes that Defendants' operation of these

- 4 -

systems results in the performance of the method claimed by Claim 11 of the '461 patent.  Dr. Rose's analysis and opinions, and citations to the primary evidence relied upon in reaching those opinions, are set forth in his accompanying declaration (which is submitted under seal).  The testimony and documents cited by Dr. Rose are submitted as exhibits 1-4, 6, and 18 to the Confidential Declaration of Jeff Eichmann (which is submitted under seal).

### 3.    Defendants' arguments

The Defendants do not dispute their infringement of many of the elements of the asserted claims.  Nor do they offer the testimony or opinion of their own independent expert, or even their in-house engineers, to refute Enovsys' infringement contentions.  Instead they simply assert that Enovsys lacks evidence of infringement of certain elements of the claims.  From a procedural standpoint, this is all they have to do in bringing this motion.  But from a factual standpoint, when the Defendants' non-infringement arguments are scrutinize, it becomes evident that they rest on faulty claim constructions and a misapplication of those constructions to their accused systems.

Additionally, the Defendants argue that Enovsys is barred from invoking the doctrine of equivalents to prove infringement in this case.  Their argument has two parts to it; neither of which holds up.[2]

***part 1***:  The Defendants first contend that because the claims of the '159 and '461 patents were amended during prosecution, Enovsys may not invoke the doctrine of equivalents to establish infringement.

This argument is premised on a broad stroke, and erroneous, application of the doctrine of prosecution history estoppel.  That doctrine holds that where a claim is narrowed by amendment during prosecution to overcome prior art, a presumption arises that the territory between the broader, original claim and the new, narrower

---

[2] Enovsys notes that it does not believe it must rely on the doctrine of equivalents to prove infringement in this case.  The asserted claims, when properly construed, are literally infringed by the Defendants, as demonstrated by the Defendants' admissions and the detailed analysis of Dr. Rose.

claim has been surrendered (and cannot later be recaptured under the doctrine of equivalents).  *Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1298 (Fed. Cir. 2005) ("A narrowing amendment made to avoid prior art creates a presumption that the patentee surrendered the territory between the original claims and the amended claims," *citing Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002)).

The Defendants' reliance on this doctrine is fundamentally flawed for three reasons.

<u>*First*</u>, the doctrine of prosecution history estoppel requires a claim element by claim element analysis.  The inquiry is not whether all equivalents to an entire claim (or patent) have been surrendered, as the Defendants suggest.  The inquiry is whether equivalents to the claim limitation(s) at issue have been surrendered.  *Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1144 (Fed. Cir. 2004) ("The scope of the patentee's concession is determined on a limitation-by-limitation basis").  The Defendants not only fail to recognize this principle in their statement of the law or analysis, they do not identify a single claim limitation that they contend has been stripped of its rights under the doctrine of equivalents.  The Defendants' broad brushed and conclusory approach does not comport with the law.

<u>*Second*</u>, the doctrine of prosecution history estoppel only applies where the alleged equivalent (the element that is being asserted as infringing under the doctrine of equivalents) falls within the territory between the original claim and the amended claim.  *Research Plastics*, 421 F.3d at 1298 (Fed. Cir. 2005) ("A narrowing amendment made to avoid prior art creates a presumption that the patentee surrendered <u>the territory between the original claims and the amended claims</u>" (emphasis added)); *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1305 (Fed. Cir. 2005) ("A narrowing amendment  . . . . gives rise to a presumption that the patentee has surrendered all subject matter between the original claim limitation and the amended claim limitation").  Thus, in determining whether a particular equivalent has been

- 6 -

surrendered, it must be determined whether that equivalent falls within the territory between the original and amended claims (or, put another way, whether the equivalent would have literally infringed the original claim but no longer infringes the amended claim).  Again, the Defendants do not even attempt to engage in any such analysis. Moreover, the two equivalents that Plaintiff asserts would infringe under the doctrine of equivalents if the Defendants' claim constructions of Claim 1 of the '159 patent were adopted – (a) terrestrial based paging is equivalent to satellite based paging; (b) using a computer to request location from the system is equivalent to using a telephone to do so – concern claim limitations that were not amended during prosecution.[3]  Thus <u>no</u> territory was surrendered as to these limitations.

   *Third*, even where a claim was narrowed and a particular equivalent would fall within the territory between the original and amended claim, that is not the end of the story.  This would only give rise to a *presumption* that the equivalent had been surrendered; a presumption that can be rebutted in a number of ways.  "[W]here the amendment cannot reasonably be viewed as surrendering a particular equivalent" the presumption may be rebutted.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002).  "The patentee may rebut [the] presumption by showing that the alleged equivalent was unforeseeable at the time the amendment was made, that the alleged equivalent was tangential to the purpose of that amendment, or that there was some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question."  *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1385 (Fed. Cir. 2005).  Again, the Defendants make

---

   [3]  The Defendants argue that Claim 1 of the '159 patent requires paging by satellite and that the last element of Claim 1 requires disclosure of the device location to a "caller" (who they define as someone who places a telephone call into the system to request location).  Plaintiff disputes the Defendants' claim constructions, as set forth in Plaintiff's *Markman* briefing.  Furthermore, the claim language that includes these elements was not amended during prosecution.  Finally, Plaintiff's expert Dr. Rose shows that these two limitations, if construed as the Defendants propose, would still be infringed under the doctrine of equivalents.  Rose decl. ¶¶ 36, 62.

Plaintiff's opp. to non-infringement motion

1  no reference to this important part of the analysis.

2  In short, the Defendants' statement and application of the doctrine of

3  prosecution history estoppel is grossly oversimplified and inaccurate.  They have failed

4  to even make a showing that step one of that analysis applies – that a particular

5  equivalent has even *presumptively* been surrendered.  Their conclusory assertion that

6  no equivalents are available to Plaintiff must be rejected.

7  ***part 2***:  The second part of the Defendants' argument claims that, as a

8  factual matter, Enovsys has no evidence of infringement under the doctrine of

9  equivalents.  This is incorrect.  As explained above, Enovsys contends that each of the

10  asserted claims is literally infringed by the Defendants – thus there is no need to rely

11  on the doctrine of equivalents.  Furthermore, absent the assertion of a compelling – or

12  at least specific – non-infringement argument by the Defendants showing why Enovsys

13  cannot establish literal infringement, Enovsys had no reason or basis for asserting

14  infringement under the doctrine of equivalents.  The Defendants have, since the

15  inception of this litigation, contested infringement - but only with boilerplate and

16  conclusory denials of infringement.  It was only after the discovery cut-off, and as part

17  of the meet and confer process for this motion and the claim construction briefing, that

18  Defendants actually raised specific non-infringement arguments (which are based

19  primarily on their proposed claim constructions).  Having now been advised of those

20  positions, Enovsys responds by arguing in the alternative that Claim 1 of the '159

21  patent would still be infringed by the Defendants' iDEN system if the Defendants'

22  constructions regarding satellite paging and the term "caller" are adopted.

23  This is not an improper attempt to shift the burden of proving

24  infringement, as the Defendants claim.  It is timely and appropriate rebuttal to the

25  Defendants' counterarguments (which should have been disclosed earlier).[4]

26  

27  _____

28  [4] Enovsys should also be permitted to reevaluate its infringement allegations, and determine whether infringement is still present under the doctrine of equivalents for other claim elements if the Court adopts the Defendants' other claim constructions.

**B.**   **Infringement of Claim 1 of the '159 patent.**

    **1.**   **Defendants' iDEN system meets all limitations of Claim 1.**

Claim 1 reads (elements labeled by Enovsys):[5]

> **1.** A satellite paging communication system with means to locate the global position of a of a call receiver unit comprising:
>
> **[a]**   space satellites and terrestrial stations, some of which are adapted for the purpose of transmitting paging information and some of which, are adapted for the purpose of transmitting positioning information;
>
> **[b]**   ground control stations for processing the said information and controlling the actions of the paging network;
>
> **[c]**   the call receiver or pager having means to resolve a global position from satellites or earth based communication means;
>
> **[e]**   the system divulging to certain or all callers the global location of a callee in possession of the said call receiver white blocking such information from being divulged to certain or all other callers.

As set forth in detail in the accompanying declaration of Dr. Rose, and the documents and testimony cited and relied on by Dr. Rose in forming his opinions, each element of the system of Claim 1 is met by the Defendants' accused iDEN system. Rose decl. ¶¶ 29-67.

    **2.**   **Response to Defendants' arguments.**

The Defendants claim they do not infringe Claim 1 for 3 reasons.

First, they argue that their iDEN system does not transmit paging information via satellite. Mot. at 12. However, as explained in Plaintiff's claim construction brief and in Dr. Rose's declaration, Claim 1 does not require that the paging be done by satellite. Rose decl. ¶¶ 32-35. Additionally, if the Defendants' construction of Claim 1 were adopted (thus requiring satellite paging), their iDEN

_____

[5] The Claim contains two typographical errors, reciting "of a" twice in the preamble, and the word "white" instead of "while" in the last element.

Plaintiff's opp. to non-infringement motion

system would still infringe under the doctrine of equivalents because its transmission of paging information via ground based transmitters is insubstantially different from transmission using satellites.  Rose decl. ¶ 36.

Second, the Defendants argue that the last element of Claim 1 is not met because their iDEN system is not capable of "divulging to certain or all callers the global location of a callee in possession of the said call receiver [while] blocking such information from being divulged to certain or all other callers."  The Defendants construe this claim as requiring that the system be capable of simultaneously providing the device location to "all callers" while at the same time blocking the information from "certain or all other callers," which is not physically possible.  However, as explained in Dr. Rose's declaration, the Defendants' construction does not provide a fair reading of this language.  Rose decl. ¶¶ 63-65.  The proper construction of this phrase is that the word "while" is not used in the sense of requiring simultaneous blocking and denial, but in the sense of "although, or even though":  "the system capable of divulging the global location of a callee in possession of said call receiver or pager to certain or all callers although also capable of blocking such information from being divulged to certain or all other callers."  *Id.*  Furthermore, when properly construed, this element is satisfied by the Defendants' iDEN system.  *Id.*

Third, the Defendants also claim that the last element is not met by their system because there is no disclosure of the device's global location to a "caller."  Mot. at 13.  This argument is based on the Defendants' construction that the person requesting location must use a telephone to call in to the system to request a device location.  *Id.*  As explained in Enovsys' claim construction brief, this construction is improper.  The "caller" is the one initiating a page (also referred to as a "call" in the wireless industry) to the device owner and requesting location – he or she can do so using "any regular communication device, *such as* [but not necessarily] a telephone." '159 patent, Col. 2: 64-66.  Thus, when properly construed, this element is satisfied by the Defendants' iDEN system.  Rose decl. ¶¶ 56-59.  Furthermore, applying the

Plaintiff's opp. to non-infringement motion

Defendants' construction of caller, this element would still be infringed under the doctrine of equivalents, because it is insubstantially different to use a computer to call in to the system (to make a location request), as is done in the Defendants' system, rather than a conventional telephone.  *Id. ¶¶ 61-62*

C.   **Infringement of Claim 1 of the '461 patent.**

1.   **Defendants' iDEN and CDMA systems meet all limitations of Claim 1.**

Claim 1 of the second patent reads:

**1**. A communication system comprising:

[a]   a network of signal transmitting and receiving units;

[b]   a mobile remote unit able to communicate with at least a signal transmitting and receiving unit to establish mobile remote unit location information at the network;

[c]   a pool of signal transmitting and receiving units from the network some of which are pre-authorized to be able to access the location of the mobile remote unit at the network for a time;

[e]   the system able to accept or deny the provision of mobile remote unit location information to a network resource selected from the pool of preauthorized signal transmitting and receiving units, during said time;

[f]   wherein the location of the mobile remote unit is continuously tracked during the time that the location is being denied to said network resource selected from said pool of preauthorized signal transmitting and receiving units.

As set forth in detail in the accompanying declaration of Dr. Rose, and the documents and testimony cited and relied on by Dr. Rose in forming his opinions, each element of the system of Claim 1 is met by the Defendants' accused iDEN and CDMA systems.  Rose decl. ¶¶ 68-104.

- 11 -

Plaintiff's opp. to non-infringement motion

## 2.    Response to Defendants' arguments.

The Defendants claim they do not infringe this Claim for 2 reasons.

<u>First</u>, the Defendants claim that their CDMA system does not infringe because it does not include a "mobile remote unit" of the type described by the claim. Mot. at 19.  Specifically, the Defendants argue that their CDMA devices are not "able to establish [their] own location" (*i.e.*, independently, without the help of the network). This argument is based on the Defendants' faulty claim construction of "mobile remote unit," which improperly imports the "means plus" limitations of the "call receiver or pager" from Claim 1of the '159 patent into the definition of this term (and all other similar terms in the '461 patent).  As explained in Enovsys' claim construction brief and in Dr. Rose's declaration, this construction is wrong.  Rose decl. ¶ 83.  And when this term is properly construed, it is clearly found in both the iDEN and CDMA systems.  *Id.* ¶¶ 77-81.  Moreover, the CDMA system still infringes under Defendants' construction because some of their CDMA devices do in fact have the ability to independently (*i.e.*, on their own) resolve their position.  *Id.* ¶ 83.

<u>Second</u>, the Defendants claim that neither the iDEN or the CDMA system meets the "continuously track" element of Claim 1.  Mot. at 16-17.  This argument is again based on an erroneous construction of the phrase.  The claim does not require that the device location be tracked "all of the time," as the Defendants argue.  Rose decl. ¶ 103.  The claim specifically states that such tracking need only occur "during the time that the location is being denied to said network resource selected from said pool of preauthorized signal transmitting and receiving units."  '461 patent, col. 9-10. That time need not be of any particular duration, much less the unbounded period (all of the time) argued by the Defendants.  Moreover, when properly construed, this element is met by the Defendants' iDEN and CDMA systems.  *Id.* ¶¶ 98-102

Plaintiff's opp. to non-infringement motion

**D.  Infringement of Claim 2 of the '461 patent.**

Claim 2 depends from Claim 1 and states:  "The communication system of claim 1, the network of signal transmitting and receiving units includes a terrestrial control station and at least one of terrestrial signal transmitting and receiving stations and satellite signal transmitting and receiving stations."

The Defendants' iDEN and CDMA systems infringe Claim 1, as explained above.  Furthermore, both systems meet the additional elements of this Claim (which the Defendants do not dispute).  Rose decl. ¶¶ 106-110.

**E.  Infringement of Claim 11 of the '461 patent.**

**1.  Defendants' iDEN and CDMA systems meet all limitations of Claim 11.**

Claim 11 claims the following 5 step method:

> **11**. A method for divulging or blocking the location information of a mobile remote receiving unit associated with a network comprising:
>> i) receiving a request at the network for location information of the mobile remote receiving unit;
>> ii) identifying the source of request;
>> iv) verifying that the source of request is pre-authorized to access location information of the mobile remote receiving unit at the network;
>> v) querying at the network for location information disclosure instruction for the mobile remote receiving unit;
>> vi) using said instruction (v) to allow or block mobile remote receiving unit location information to the pre-authorized source of request.

As set forth in detail in the accompanying declaration of Dr. Rose, and the documents and testimony cited and relied on by Dr. Rose in forming his opinions, the Defendants perform each step of this method in operating the accused iDEN and CDMA systems.  Rose decl. ¶¶ 111-129.

### 2.      Response to Defendants' arguments.

The Defendants start out by claiming that "Enovsys has adduced no evidence that any one of [Claim 11's] steps has ever been performed, much less every step." Mot. at 14.  This is bold assertion that is clearly refuted by the evidence – Defendants' own documentation and witness testimony – as analyzed by Dr. Rose.

The Defendants then go on, in slightly greater specificity, to challenge Enovsys' assertion that the two step privacy check required by Claim 11 is performed by them in operating their systems.  Specifically, the Defendants claim that (i) they do not perform the step of "verifying that the source of request is pre-authorized to access location information of the mobile remote receiving unit at the network" and (ii) the conduct that Enovsys alleges infringes this element amounts to verifying that the source of the request has permission to interact with the network, not to access the location of the specific device whose location is requested.  Mot. at 15.  However, this argument rests on an incorrect reading of the claim language.  Rose decl. ¶ 124.  That language expressly requires that what's being verified is the requestor's authorization to receive the device location "*at the network*" – thus, this step is satisfied by a process (as performed by the Defendants) where a verification is made that the source of the request is allowed to access and interact with the system to request and receive location.  *Id.*  Further, by verifying that a requester is authorized to access the system to make location requests and access location, the system is in fact verifying that the source is preauthorized to access the location of *the* mobile remote unit, because this step must be passed for the location of *any* mobile remote unit to be provided.  *Id.*

//
//

**F.**   **Infringement of Claim 23 of the '461 patent**

    **1.**   **Defendants' iDEN and CDMA systems meet all limitations of Claim 23.**

Claim 23 states:

> **23**. A communication system for limiting access to a pre-authorized location based service provided for a mobile remote by the system, wherein the location of the mobile remote unit is continuously being tracked by the system, the system comprising:
>
>    i) a network of communication resources some of which are able to communicate with the mobile remote unit;
>
>    ii) at least a first communication network resource pre-authorized to be able to access said location based service;
>
>    iii) at least a second network communication resource able to inhibit a pre-authorized network resource according to (ii) from accessing said location based service for a time while allowing other network resources of (ii) to access said location based service.

As set forth in detail in the accompanying declaration of Dr. Rose, and the documents and testimony cited and relied on by Dr. Rose in forming his opinions, each element of the system of Claim 23 is met by the Defendants' accused iDEN and CDMA systems.  Rose decl. ¶¶ 130-143.

    **2.**   **Response to Defendants' arguments.**

The Defendants have one non-infringement argument for this claim. They argue that this claim requires that the device location be tracked "all of the time" and that their systems do not do this.  Mot. at 23.  This argument is based on the Defendants' construction of the preamble's phrase:  "wherein the location of the mobile remote unit is continuously being tracked by the system."  However, as explained in Plaintiff's claim construction briefing, this term does not require

construction.  It forms part of a preamble that does not add any limitations but merely introduces the system components identified in the body of the claim; therefore it does not require construction or application in an infringement analysis.  Further, if this phrase is construed, it should not be construed to require tracking "all of the time" as the Defendants argue; rather this language merely explains that, as recited in the last element of this claim, the system can continue to access the device location even during the time that a preauthorized resource is denied access to the location.  Rose decl. ¶ 133.  The Defendants' systems clearly do this.  *Id.* ¶¶ 132, 140-142.

**G.   Infringement of Claim 25 of the '461 patent**

      **1.   Defendants' iDEN and CDMA systems meet all limitations of Claim 25.**

Claim 25 states:

> **25**. A communication system for accepting or denying access to the location information of a mobile remote associated with the system, such a system comprising:
>
> **[a]** the mobile remote unit able to communicate with the system to establish mobile remote unit location information;
>
> **[b]** a network of communication resources also associated with the system and some of which are pre-authorized to obtain said establish mobile remote location information from the system;
>
> **[c]** the mobile remote unit able to deny the provision of said establish mobile remote unit location information to a pre-authorized communication resource selected from the network of pre-authorized communication resources during a period time when access to mobile remote unit location information has been granted to another preauthorized communication resource at the network.

As set forth in detail in the accompanying declaration of Dr. Rose, and the documents and testimony cited and relied on by Dr. Rose in forming his opinions, each element of the system of Claim 25 is met by the Defendants' accused iDEN and CDMA systems.  Rose decl. ¶¶ 144-160.

### 2. Response to Defendants' arguments.

The Defendants dispute infringement of this Claim on two grounds.

<u>First</u>, they again claim that their CDMA system does not infringe because the CDMA devices are not capable of independently determining their location.  Mot. at 18.  But again, this is not required by the claim, and if it were, the Defendants' CDMA system would still infringe.  Rose decl. ¶ 152.

<u>Second</u>, the Defendants claim that neither the iDEN or CDMA system infringes because the mobile remote units are not able to "*prohibit the network* from furnishing location information to a preauthorized source."  Mot. at 18 (emphasis Defendants').  This argument is supported by neither the language of Claim 25 nor the facts.  The Claim requires that the device be able to "deny the provision" of the device location to a preauthorized source.  Rose decl. ¶ 159.  One of the ways the device can do that is by preventing its location from being calculated or provided to the system in the first place – even though it is being requested by a preauthorized source.  *Id.*  And that is exactly what the Defendants' devices can do.  *Id. ¶¶* 157-158.

//
//

Plaintiff's opp. to non-infringement motion

**H.** **Infringement of Claim 28 of the '461 patent**

    **1.** **Defendants' iDEN and CDMA systems meet all limitations of Claim 28.**

Claim 28 states:

**28**. A communication system comprising:

**[a]** a network of communication resources;

**[b]** a first communication resource able to establish its location information at the network;

**[c]** wherein at least a profile is maintained by the system, said profile containing the identity of a preauthorized resource, identity of the first communication resource and a location access field indicating whether said preauthorized resource identified in the profile should be allowed/disallowed to access the location information of the first communication resource identified in said profile;

**[d]** the system able to use the location access field of a first profile to deny the location information of the first communication resource to the preauthorized resource identified in said first profile while allowing another preauthorized resource identified in a second profile to access the location information of the first communication resource during the time that access is being denied to the preauthorized resource identified in said first profile.

As set forth in detail in the accompanying declaration of Dr. Rose, and the documents and testimony cited and relied on by Dr. Rose in forming his opinions, each element of the system of Claim 28 is met by the Defendants' accused iDEN and CDMA systems. Rose decl. ¶¶ 161-177.

    **2.** **Response to Defendants' arguments.**

Defendants dispute infringement of this claim on two grounds.

First, they claim – as with Claims 1, 2, and 25 – that their CDMA system does not infringe because the CDMA mobile devices cannot independently establish

- 18 -

1   their location.  This argument fails for the same reasons discussed above – it is based

2   on an incorrect claim construction and further ignores the facts.  Rose decl. ¶ 167.

3   _Second_, the Defendants claim that their systems do not maintain a first

4   and second profile, as the claim requires.  Mot. at 17.  The Defendants do not explain

5   this assertion in detail; they simply assert that Enovsys has no evidence that they their

6   systems include these elements.  _Id._  However, as explained in Dr. Rose's declaration –

7   the Defendants' systems clearly include the required profiles.[6]  Rose decl. ¶ 168-169.

8   * * *

9   Accordingly, for the reasons set forth above, there is substantial evidence

10  to support Enovsys' allegations of direct infringement by the Defendants.

11  **IV.    The Defendants have induced others' infringement of the system claims.**

12  **A.    The law.**

13  Under Section 102(b):  "whoever actively induces infringement of a

14  patent shall be liable as an infringe."  35 U.S.C. § 102(b).

15  "To establish liability under section 271(b), a patent holder must prove

16  that once the defendants knew of the patent, they actively and knowingly aid[ed] and

17  abett[ed] another's direct infringement.  However, knowledge of the acts alleged to

18  constitute infringement is not enough.  The mere knowledge of possible infringement

19  by others does not amount to inducement; specific intent and action to induce

20  infringement must be proven."  _DSU Med. Corp. v. JMS Co._, 471 F.3d 1293, 1305

21  (Fed. Cir. 2006) (en banc, as to this section of opinion).

22  Intent can be inferred from circumstantial evidence.  "While proof of

23  intent is necessary, direct evidence is not required; rather, circumstantial evidence may

24  suffice."  _Id._ at 1306.

25

26  _____

27  [6] Defendants' brief, and their proposed claim constructions, suggests that the "second profile" be identical in content to the first profile (_i.e._, that it include each of

28  the three items recited).  However, the claim language does not support this view – it merely requires a "second profile" and does not limit its contents.

- 19 -

**B.      The Defendants' inducement.**

The Defendants have actively induced direct infringement of the Enovsys patents by two categories of "others":  (1) their subscribers and (2) partner/providers of specific LBS applications, both of which use the Defendant's infringing iDEN and CDMA systems (and therefore themselves directly infringe).  Specifically, Defendants:

**(1)** have known of the '159 patent since at least 1999, when approached by inventor Fomukong regarding possible licensing of the patent, and have known of the '461 patent since at least early 2006, when approached regarding both patents by Enovsys' prior litigation counsel.  Decl. of Mundi Fomukong ¶¶ 3-5, exh. B.

**(2)** despite their knowledge of the patents, the Defendants went on and continue to offer, provide, and operate their accused iDEN and CDMA systems, which, when used in their ordinary course by Defendants' subscribers and partner/providers of LBS applications, infringe the asserted system claims (all asserted claims except Claim 11 of the '461 patent)[7] as set forth above; and

**(3)** the Defendants have actively and knowing aided and abetted the infringing use of their accused iDEN and CDMA systems by their business partner LBS application providers by:

- offering, operating, and populating with information the Sprint Nextel LBS developers website (and the materials provided there), and allowing and encouraging users of that website to communicate with the Defendants and with each other regarding the development of LBS applications, *see, e.g.*, Exhibit 77;

  http://developer.sprint.com/site/global/develop/technologies/location_based_serv/p_lbs.jsp; exh. 4 (Rodney Nelson depo.) at 283:20 – 286:7; *id.* at 288:7-18; id. at 377:9 - 379:9 ("Q. [The] [i]nformation shown here on the Developers Guides portion of the Sprint Developers website is also

---

[7] Plaintiff does not assert that the Defendants indirectly infringe the method Claim 11.

Plaintiff's opp. to non-infringement motion

information provided by Sprint to developers of location based services, correct?  A.  That's correct.  Q.  To assists those developers in creating location based applications, right?  A. Yes");

- publishing and making available APIs for the iDEN and CDMA location platforms; *see*, *e.g*., exh. 1 (Sprint Nextel 30(b)(6) (Tom Moore testifying)) at 153:25 – 154:18; *id*. at 43:16 - 44:4 ("A.  Sprint Nextel publishes location services APIs that allow third-party application servers to plug into the network to request location, so in both the Sprint and iDEN network we have a gateway that essentially is our control point for allowing third parties to request location");

- offering assistance, support, and instruction to LBS developers and providers through the Application Developers Program, *see*, *e.g*., exh. 2 (Sprint Nextel 30(b)(6) (Kevin Butler testifying)) at 151:19-152:15 ("Q.  What is the application developer program?  A.  The application developer program is a program that encourages application development and utilization on Sprint products.  It's a special team that works directly with the application developers themselves like TeleNav and Garmin, Bones in Motion, et cetera.  Q.  There's a team at Sprint Nextel that works with the location-based application providers to develop those applications?  A. Yes"); exh. 1 at 150:15- 151:23 ("A. There's -- we have an application developer program that is essentially a group of people that work with application providers to help them understand how to access the Sprint and Nextel systems.  So from that perspective, yes.  We have expertise that is helping -- its sole purpose in life is to help these application partners get hooked up to our network."); exh. 4 at 286:23 – 288:18 ("Q.  Who are you referring to when you say the developer program employees? A. There's a group referred to as [the] Application Developer Program that basically manages the website. Q.  And what is the purpose of that group?  A.  The

purpose of that group is to support developers so they can, you know, develop, more easily develop, applications for Sprint phones.  Q.  Including location based applications? A.  Including location based applications, yes"); and

- offering assistance, support, and instruction to LBS developers and providers during the certification or "onboarding" process, see, *e.g.*, exh. 3 (Sprint Nextel 30(b)(6) (Rodney Nelson testifying)) at 97:25 – 102:6 ("Q. But Sprint Nextel as part of this onboarding phase works with the developer of the location-based applications to test the application and make sure that it interfaces properly with the location studio; correct?  A.  We work with the -- Sprint works with the application developer to test the interface, to make sure that the interface is working correctly.  Q.  And to make sure that when the application server for this location-based application sends in requests to location studios, that that communication happens properly?  A. That's correct").

(4) the Defendants have actively and knowing aided and abetted the infringing use of their accused iDEN and CDMA systems by their subscribers by:

- offering for sale and selling GPS and location-enabled mobile devices; *see, e.g.*, sprint.com website; exh. 1at 16:1-11; *id.* at 240: 19-241:5 ("Well, all the devices we sell now are GPS enabled, so saying that we can't sell GPS-enabled devices would mean that essentially sales stops"); *id.* at 47:18-23; exh. 34 & 35 (user guides for Defendants' location enabled devices); exh. 4 at 23: 8-22;

- offering for sale and selling subscriptions to LBS applications for the iDEN and CDMA systems, through the Sprint website and through direct interfacing with corporate clients and individual consumers; *see*, *e.g*., exh. 1 at 148:2-19; sprint.com; and

- providing support, instructional materials, and advertisements for LBS applications and GPS and location-enabled devices. *See, e.g*., sprint.com; exhs. 34 and 35.

(**5**) it is reasonable to infer from this conduct that the Defendants specifically intend that their partner/LBS application providers and their subscribers infringe the Enovsys patents by using the accused iDEN and CDMA systems. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp*., 420 F.3d 1369, 1379 (Fed. Cir. 2005) ("Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe" (internal citation omitted)); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1311 (Fed. Cir. 1998) (upholding summary judgment for plaintiff on the ground that advertisements to customers encouraging infringing use were sufficient to support claim of induced infringement); *Oak Industries, Inc. v. Zenith Electronics Corp.,* 726 F. Supp. 1525, 1542-43 (ND Ill. 1989) ("plaintiffs may prove Zenith's intent to induce infringement by showing a number of actions from which the trier of fact could infer such intent.  Such circumstances may include giving a direct infringer instructions on how to use a patented process or designing a product to infringe" (citations omitted)).

### C.    Defendants' arguments.

Defendants dispute that they have induced infringement on four grounds. None of them carry their argument.

First, Defendants argue that "Plaintiff has no evidence of any instances of direct infringement by another person of entity."  Mot. at 20.  The law does not require, however, that Plaintiff identify specific *individuals* (*e.g.*, the names of Defendants' subscribers) and the specific *dates* on which they used the Defendants' accused systems.  Proof of infringing use by Defendants' subscribers and partner/LBS application providers need not be established by direct evidence. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) ("It is hornbook law that

direct evidence of a fact is not necessary").  And it is clear from the record that the Defendants' accused systems are not sitting idly by – they are being used in an infringing manner every day.

Second, Defendants argue that "Plaintiff has no evidence that the accused systems as used by others necessarily infringe the claims of the patents-in-suit."  Mot. at 20.  The law of inducement does not include this "necessarily infringe" element.  (Indeed, even the doctrine of contributory infringement allows for occasional non-infringing use of the accused component).  The case cited by Defendants stands only for the proposition that when induced use of an accused system is alleged, and that system has different uses (some infringing, some not), it is not enough to simply show it has been used. There must be evidence that it was *in fact* (but not *necessarily*) used in the infringing manner.  *ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd*., 501 F.3d 1307, 1313 (Fed. Cir. 2007).  Here the testimony of Defendants' witnesses, as cited and analyzed by Dr. Rose, clearly establishes that the accused iDEN and CDMA systems are not only capable of infringing use but such use has in fact been made by Defendants' subscribers and LBS partners.

Third and Fourth, Defendants argue that "Plaintiff cannot show how Defendants encouraged infringement," mot. at 20, and "Plaintiff has no evidence that Defendants knew others were using the accused system in an infringing manner.  Nor does it have any evidence that Defendants specifically intended others to use the accused systems in an infringing manner." *Id.* at 20-21.  As shown above, however, Plaintiff has substantial and specific evidence – taken from Defendants' own testimony – that supports its inducement allegations.

**V.      Defendants' infringement is not limited to network-initiated LBS requests.**

In the world of location based services, there is both a practical and technical distinction between what are referred to as network-initiated LBS services and user-initiated (also called handset-initiated) LBS services.  With network initiated services, someone is communicating with the network in an attempt to locate an

- 24 -

individual user (or his or her device).  With user-initiated services, it is the user of the device that is initiating the location request – seeking to determine his or her own location so that, for example, driving directions can be provided.

As Defendants note, Plaintiff's infringement contentions with respect to Claim 1 of the '159 patent and Claims 1, 2, 11, and 23 of the '461 patent concern the use and operation of the Defendants' accused iDEN and CDMA systems in the context of network-initiated location requests.  The Defendants also argue, however, that Enovsys' infringement allegations regarding all claims (including the remaining asserted claims – Claims 25 and 28 of the '461 patent) should also be limited to the network-initiated context because there is no evidence of infringement in the user-initiated context.  Mot. at 10, lines 1-10.  This argument must be rejected.  As set forth in Enovsys' supplemental interrogatory responses and in Dr. Rose's declaration, infringement of Claims 25 and 28 is grounded in the use of the iDEN and CDMA systems in both the network and user initiated contexts.  Rose decl. ¶¶ 144-171.[8]

## VI.   Conclusion.

For the foregoing reasons, the Defendants' non-infringement motion must be denied on all grounds and this case allowed to proceed to trial.

Respectfully submitted,

Dated:  January 23, 2008                    DOVEL & LUNER, LLP


By:    /s/ Jeff Eichmann
          Jeff Eichmann
Attorneys for Plaintiff and Counterclaim
Defendant Enovsys, LLC

---

[8]   Additionally, Plaintiff notes that, while it does not presently assert infringement of any Claims other than Claims 25 and 28 in the user-initiated context, this should not be construed (for purposes of any subsequent litigation between the parties) as an admission or adjudication that the other claims are not infringed in the user-initiated context.  It is instead a matter of Plaintiff not identifying evidence of such infringement and Defendants moving based on lack of evidence.

Plaintiff's opp. to non-infringement motion