CV 06-5306 (k)
Enovsys V.
Nextel

**COURT'S INSTRUCTION NO. 1**

**DUTIES OF JURY TO FIND FACTS AND FOLLOW THE LAW**

U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
MAY 16
MAY 16 2008
FILED, DAWN BULLOCK
RECORDS SUPERVISOR

Members of the jury:

Now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law which applies to this case. A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return — that is a matter entirely up to you.

# COURT'S INSTRUCTION NO. 2

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

(1)  the sworn testimony of any witness;

(2)  the exhibits which are received into evidence; and

(3)  any facts to which the lawyers have agreed.

# COURT'S INSTRUCTION NO. 3
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements, in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition for any testimony or exhibits received only for a limited purpose, I gave a limiting instruction, which you must follow.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

# COURT'S INSTRUCTION NO. 4
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

# COURT'S INSTRUCTION NO. 5

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness' memory;

(3)    the witness' manner while testifying;

(4)    the witness' interest in the outcome of the case and any bias or prejudice;

(5)    whether other evidence contradicted the witness' testimony;

(6)    the reasonableness of the witness' testimony in light of all the evidence; and

(7)    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

# COURT'S INSTRUCTION NO. 6
## EXPERT WITNESSES

You may have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for those opinions. In this case, you may have heard opinions from experts with technical expertise and experts with expertise on the issue of damages.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

## COURT'S INSTRUCTION NO. 7

## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

# COURT'S INSTRUCTION NO. 8

## CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

# COURT'S INSTRUCTION NO. 9

## PATENT CLAIMS

Before you decide whether the Defendants have infringed the patents in this case or whether the patents are invalid, you will have to understand the patent claims.

The patent claims are numbered sentences at the end of the patent. The patent claims involved here are claim 1 of the '159 patent, beginning at column 8, line 45 of the patent, which is exhibit 1 in evidence and claims 1, 2, 11, 23, 25, and 28 of the '461 patent, beginning at column 9, line 50 of the patent, which is exhibit 2 in evidence.

The claims are intended to define, in words, the boundaries of the invention. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

In considering the scope of the patent claims in your decisions on infringement and your decision on invalidity, it is irrelevant whether the claims of the patent were amended or modified during the patent application process. What is relevant is the meaning of the claims as they appear in the issued patents.

# COURT'S INSTRUCTION NO. 10
# CLAIM CONSTRUCTION FOR THE CASE

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patents has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

From the '461 patent:

| Claim term or phrase | Meaning |
| --- | --- |
| "mobile remote" and "mobile remote unit" | a small, portable device used to send or receive communication transmission from a remote location |
| "mobile remote receiving unit" | a small, portable device that is used to receive communication transmissions from a remote location |
| "to establish" | to bring about; bring into existence |
| "pre-authorized" and "preauthorized" | authorized to submit a request in advance of determining whether the request will be granted |
| "continuously tracked" | kept track of (i.e. observed or known about) without interruption |
| "location information disclosure instruction" | information specifying or instructing whether the location information can or should be disclosed |

| | |
|---|---|
| "profile" | a set or collection of information, attributes, or parameters relating to a particular person, device, application, or subject |
| "location access field" | a field, element or item of data in a profile that indicates, or contains information indicating, whether access to location information can or should be allowed. |

From the '159 patent:

| Claim term or phrase | Meaning |
|---|---|
| "global position" | the position or location (of an object or person) on the face of the earth estimated with a high degree of accuracy, such as from using the Global Positioning System |
| "global location" | location on the face of the earth |
| "space satellites and terrestrial stations, some of which are adapted for the purpose of transmitting paging information" | The paging information need not be transmitted by space satellites |
| "paging information" | information comprising or accompanying a paging message |
| "positioning information" | information comprising or used to determine the global position (of an object or person) |

| "call receiver or pager" | small, portable device to receive short messages sent electronically; the term "call receiver or pager" may include a cellular telephone |
|---|---|
| "means to resolve a global position from satellites or earth based communication means" | <u>function:</u>  resolving a global position from satellites or earth based communication means.<br><br><u>structures:</u>  transceiver, connecting circuitry, CPU, satellite receiving means, terrestrial receiving means, decoders, and temporary store |
| "caller" | a party initiating a message to the call receiver |
| "the system divulging to certain or all callers the global location of a callee in possession of the said call receiver white [sic] blocking such information from being divulged to certain or all other callers" | the system divulging to certain or all callers the global location of a callee in possession of the said call receiver, although also capable of blocking such information from being divulged to certain or all other callers |

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

1

## COURT'S INSTRUCTION NO. 11

2

## THE NATURE OF THE ACTION AND THE PARTIES

3

4       I will now give you a summary of each side's contentions in this case. I will then

5  provide you with detailed instructions on what each side must prove to prevail on each

6  of its contentions.

7       The plaintiff in this case is Enovsys LLC ("Enovsys").    There are two Defendants

8  in this case.

9       The first defendant, which is referred to as "Sprint" in this case, consists of a

10  group of four companies: Sprint Nextel Corporation, Sprint Communications Company

11  L.P., Sprint Spectrum, L.P., Sprint Solutions, Inc.  For purposes of this case, these four

12  companies are deemed to be one company known as Sprint.

13       The second defendant, which is referred to as "Nextel" in this case, consists of a

14  group of seven companies: Nextel Communications, Inc., Nextel of California, Inc.,

15  Nextel Communications of the Mid-Atlantic, Inc., Nextel of New York, Inc., Nextel

16  South Corp., Nextel of Texas, Inc., and Nextel West Corp.  For purposes of this case,

17  these seven companies are deemed to be one company known as Nextel.

18       The parties and I have sometimes referred to Sprint and Nextel together as "Sprint

19  Nextel."   However, at times it is important to distinguish Defendant Nextel and

20  Defendant Sprint from one another.

21       This case concerns two patents U.S. Patent No. 5,918,159 (referred to as the '159

22  patent) and U.S. Patent No. 6,560,461 (referred to as the '461 patent).

23  Enovsys seeks to hold Nextel liable for infringing claim 1 of the '159 patent.  Enovsys

24  also seeks to hold Sprint and Nextel liable for infringing claims 1, 2 ,11, 23, 25 and 28

25  of the '461 patent.

26       Defendant Sprint Nextel denies that it has infringed the asserted claims of the

27  patents-in-suit and maintain that, in addition, the asserted claims of these patents are

28  invalid. Your job is to decide whether claims of the '159 patent and the '461 patent have

1    been infringed and whether those claims are invalid.

2         I will now provide you with detailed instruction of the parties' claims and

3    defenses.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COURT'S INSTRUCTION NO. 12

## CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

# COURT'S INSTRUCTION NO. 13

## TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

1
2

**COURT'S INSTRUCTION NO. 14**

**CONSTRUCTION OF MEANS-PLUS-FUNCTION CLAIMS FOR THE CASE**

3

4       The following clause used in claim 1 of the '159 patent was written in a special
5   form and is called a "means-plus-function" clause: "means to resolve a global position
6   from satellites or earth based communication means." This clause requires a special
7   interpretation. The words of the clause do not cover all means that perform the recited
8   function of "resolving a global position from satellites or earth based communication
9   means;" they cover <u>only</u> the structure described in the patent specification and drawings
10  that performs that function or an equivalent of that structure. The court has found that
11  the structures in the patent specification that perform that function are:  transceiver,
12  connecting circuitry, CPU, satellite receiving means, terrestrial receiving means,
13  decoders, and temporary store.

14       You must use my interpretation of the means-plus-function element in your
15  deliberations regarding infringement and validity.

16
17
18
19
20
21
22
23
24
25
26
27
28

# COURT'S INSTRUCTION NO. 15

## INFRINGEMENT - GENERALLY

I will now instruct you as to the rules you must follow when deciding whether Enovsys has proven that Sprint Nextel infringed any of the claims of the '159 or '461 patents.

Patent law gives the owner of a valid patent the right to exclude others from using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without authority or permission infringes the patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim of the patents but no infringement as to one or more other claims.

In this case, Enovsys has alleged that Sprint Nextel has infringed the claims of the patents in two manners: (1) by directly infringing the claims, and (2) by actively inducing others to infringe the claims.

In a moment, I will explain these two types of infringement in more detail. For both types of infringement, Enovsys bears the burden of proof by a preponderance of evidence. That means that Enovsys must show that it is more likely than not that the Defendants have infringed one or more of the patents' claims.

# COURT'S INSTRUCTION NO. 16

## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

# COURT'S INSTRUCTION NO. 17

## INFRINGEMENT OF OPEN ENDED OR "COMPRISING" CLAIMS

The preambles to the asserted claims of the patents use either the phrase "system comprising" or "method . . . comprising." The word "comprising" means "including the following but not excluding others."

As a result, if you find that the accused system of a Defendant includes all of the elements in a patent claim, the fact that the system might also include additional components would not avoid infringement of that claim. Similarly, if you find that the Defendants perform a method that includes each of the steps recited in Claim 11 of the '461 patent, the fact that they may also perform additional steps would not avoid infringement of that claim.

# COURT'S INSTRUCTION NO. 18

## INDEPENDENT AND DEPENDENT CLAIMS

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim. You must determine, separately, for each independent claim, whether or not there is infringement. Claim 1 of the '159 patent and claims 1, 11, 23, 25 and 28 of the '461 patent are independent claims.

A dependent claim refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

Claim 1 of the '461 patent is an independent claim and recites several elements. Claim 2 is a dependent claim that refers to Claim 1 and includes an additional element. Claim 2 requires each of the elements of Claim 1, as well as the additional elements identified in Claim 2 itself.

To establish infringement of Claim 2, Enovsys must show that the Defendants also infringe each and every element of Claim 1.

If you find that Claim 1 is not infringed, then you cannot find that Claim 2 is infringed.

# COURT'S INSTRUCTION NO. 19

## DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

# COURT'S INSTRUCTION NO. 20

## Direct infringement - literal infringement

I will now explain the first type of infringement alleged by Enovsys - direct infringement by the Defendants.

Enovsys contends that Defendant Nextel directly infringes Claim 1 of the '159 patent because it uses, sells, and offers to sell a system that infringes Claim 1.

Enovsys contends that both Defendant Nextel and Defendant Sprint directly infringe Claims 1, 2, 11, 23, 25, and 28 because the Defendants use, sell, and offer to sell systems and methods that infringe those claims.

To determine infringement, you must compare the accused system or method with each claim that Enovsys asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is infringed only if the Defendant's system or method includes each and every element or step in that patent claim. If the Defendant's system or method does not contain one or more elements or steps recited in a claim, the Defendant does not infringe that claim.

For the asserted method claim, Claim 11 of the '461 patent , if one or more steps of the method is performed by someone other than the Defendant, there can be no infringement unless Enovsys has proven that the Defendant controlled or directed the activity of the others who performed those steps.

You must determine infringement with respect to each patent claim individually.

The same element or step of an accused system or method may satisfy more than one element of a claim.

# COURT'S INSTRUCTION NO. 21

## INFRINGEMENT - USE OF A SYSTEM

A Defendant is liable for direct infringement of a patent claim if the Defendant exercises control and makes beneficial use of a system that infringes the claim. A Defendant need not own or directly use every component of a system to make infringing use of the system.

# COURT'S INSTRUCTION NO. 2 ²

## INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS

As I have previously explained, claim 1 of the '159 patent includes the phrase "means to resolve a global position from satellites or earth based communication means," which is written in means-plus-function form. Means-plus-function requirements in a claim are subject to slightly different rules for deciding infringement. I will now explain the rules that apply to the means-plus-function phrase of claim 1 of the '159 patent.

An accused system meets the means-plus-function requirement of a patent claim if two conditions are met: (1) it has a set of structures that performs the identical function recited in the claim and (2) that set of structures is either identical or "equivalent" to the set of structures that I defined earlier as performing the function.

For claim 1 of the '159 patent, the relevant function is "to resolve a global position from satellites or earth based communication means." The relevant set of structures includes "transceiver, connecting circuitry, CPU, satellite receiving means, terrestrial receiving means, decoders, and temporary store."

A structure or a set of structures is "equivalent" to the set of structures that I have defined as being described in the patent if a person having ordinary level of skill in the field of technology of the patent would have considered the differences between them to be insubstantial at the time the patent issued. In deciding whether the differences would be "insubstantial," you must also consider whether the structures work in substantially the same way to achieve substantially the same result. You must also consider whether, at the time of the patent issued, a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the structures. Interchangeability itself is not sufficient; in order for the structures to be considered to be interchangeable, the interchangeability of the two structures must have been known to persons of ordinary skill in that are at the time the patent issued.

# COURT'S INSTRUCTION NO. 2 3

## INDUCING PATENT INFRINGEMENT

Enovsys contends that Defendant Nextel has actively induced its customers and business partners to infringe claim 1 of the '159 patent.

Enovsys also contends that both Defendant Nextel and Defendant Sprint have actively induced their customers and business partners to infringe Claims 1, 2, 23, 25, and 28 of the '461 patent.

To show induced infringement of a patent claim by a Defendant, Enovsys must prove that it is more likely than not that the Defendant's customers or business partners have directly infringed that patent claim and that the Defendant actively and knowingly aided and abetted that direct infringement.

Enovsys must also show that the Defendant actually intended to cause the acts that constitute direct infringement, that the Defendant knew of the patent, and that the Defendant knew or should have known that its actions would lead to actual infringement.

Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.

It is not necessary to show that a Defendant has itself directly infringed as long as you find that someone has directly infringed. If there is no direct infringement by anyone, there can be no induced infringement.

As with direct infringement, you must determine induced infringement with respect to each Defendant, Nextel and Sprint, separately.

1
2

### COURT'S INSTRUCTION NO. 24
### SUMMARY OF INVALIDITY DEFENSE

3
4      Sprint Nextel contends that the asserted claims of the '159 patent and the '461
5  patent are invalid. Sprint Nextel must prove invalidity by clear and convincing evidence.
6      Claims of an issued patent may be found to be invalid. Thus, you must determine
7  whether each of asserted claims of the '159 patent and the '461 patent is invalid.
8      Sprint Nextel contends that all of the asserted patent claims are invalid for
9  obviousness.
10     I will now instruct you in more detail why Sprint Nextel alleges that the asserted
11  claims of the '159 patent and the '461 patent are invalid.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# COURT'S INSTRUCTION NO. 2⁵

## BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.   This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

# COURT'S INSTRUCTION NO. 26

## OBVIOUSNESS

Sprint Nextel contends that the asserted claims of the '159 patent and the '461 patent are invalid because the claimed inventions are "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made.

The following factors must be evaluated to determine whether Sprint Nextel has established that the claimed inventions are obvious:

1.  the scope and content of the prior art relied upon by Sprint Nextel;

2.  the difference or differences, if any, between each claim of the the '159 patent and the '461 patent that Sprint Nextel contends is obvious and the prior art;

3.  the level of ordinary skill in the art at the time the invention of the the '159 patent and the '461 patent was made; and

4.  additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Sprint Nextel must prove obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

# COURT'S INSTRUCTION NO. 27
## SCOPE AND CONTENT OF THE PRIOR ART

Prior art includes any of the following items received into evidence during trial:

1. United States or foreign patents that issued more than one year before the filing date of the patent;,

2. United States or foreign patents that issued before the invention was made;

3. United States patents with an application date before the invention was made; and

4. Knowledge, use or information otherwise accessible to the public in the United States before the filing date of the patent;

You may consider as prior art only those items that Sprint Nextel can prove by clear and convincing evidence fall with one of these categories.

# COURT'S INSTRUCTION NO. 28

## PRIORITY DATE FOR CONTINUATION IN PART APPLICATION

The '461 patent application was filed as a "continuation in part" from the earlier '159 patent. That means that the filing date for the '461 patent application is deemed to be the same as the filing date for the earlier '159 patent application, unless Sprint Nextel proves by clear and convincing evidence that the claims of the '461 patent were not disclosed in the '159 patent application.

A claim is not entitled to an earlier filing date from a previously filed application unless the previous application described the inventions as set forth in the claim of the later-filed patent. The question is not whether the claim of the later filed patent, here the '461 patent, is an obvious variant to what was disclosed in the earlier filed '159 patent. The '159 patent specification must describe the invention in sufficient detail that one skilled in the art could clearly conclude that the claim of the '461 patent was invented at the time the '159 patent was filed.

Therefore, if Sprint Nextel proves by clear and convincing evidence that a claim of the '461 patent is not sufficiently described in the '159 patent specification, then this claim is only entitled to the actual filing date of the '461 patent, March 8, 1999.

# COURT'S INSTRUCTION NO. 2̶9̶

## DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background

1  knowledge of one of ordinary skill in the art, the nature of the problem to be solved,
2  market demand, or common sense.

3       If you find that a reason existed at the time of the invention to combine the
4  elements of the prior art to arrive at the claimed invention, this evidence would make it
5  more likely that the claimed invention was obvious.

6       Again, you must undertake this analysis separately for each claim of the patents that
7  Sprint Nextel contends is obvious.

# COURT'S INSTRUCTION NO. 30

## LEVEL OF ORDINARY SKILL

The determination of whether a claimed invention would have been obvious is based on the perspective of a person of ordinary skill in the field of wireless communications systems at the time of the invention. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

- the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;
- the types of problems encountered in the art at the time of the invention; and
- the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

# COURT'S INSTRUCTION NO. 3 |

## FACTORS INDICATING NONOBVIOUSNESS

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

1. Were products or systems covered by the patent claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product or system other than those found in the claim?

2. Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3. Did others try, but fail, to solve the problem solved by the claimed invention?

4. Did others copy the claimed invention?

5. Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6. Did others in the field, or Sprint Nextel praise the claimed invention or express surprise at the making of the claimed invention?

7. Whether or not the inventions proceeded in a direction contrary to accepted wisdom in the field;

8. Whether or not others having ordinary skill in the field of the invention independently made the claimed invention at about the same time the inventors made the inventions.

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

# COURT'S INSTRUCTION NO. 32

## DAMAGES – GENERALLY

If you find that the Defendants have infringed any of the claims of the Enovsys patents, and that the infringed claims are not invalid, you must determine the amount of damages to be awarded Enovsys for the infringement. On the other hand, if you find that each of the asserted claims of the patents is either invalid or is not infringed, then you need not address damages in your deliberations.

If you need to determine damages, the amount of those damages must be adequate to compensate Enovsys for the infringement. In no event may the damage award be less than a reasonable royalty. You may not add anything to the amount of damages to punish the accused infringer or to set an example.

Enovsys must prove each element of its damages by a preponderance of the evidence.

You must decide the issue of damages separately for each of the two Defendants in this case, Nextel and Sprint.

The fact that I am instructing you as to the proper measure of damages should not be interpreted by you as suggesting any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Enovsys.

**COURT'S INSTRUCTION NO. 33**

**REASONABLE ROYALTY – GENERALLY**

The patent law specifically provides that the amount of damages that Sprint Nextel must pay Enovsys for any infringement you find may not be less than a reasonable royalty for the use that Sprint Nextel made of the patents.

A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. Enovsys is entitled to a reasonable royalty for all infringing sales.

# COURT'S INSTRUCTION NO. 34
## REASONABLE ROYALTY

I will now explain how you should determine an appropriate reasonable royalty damage award, if damages are to be awarded to Enovsys in this case.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the invention claimed by the patent.

A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent holder (also referred to as the "licensor") and the accused infringer (also referred to as the "licensee") at the time when infringement began. In this case the negotiation would have been between the inventors (Mr. Fomukong and Mr. Chesney) and Nextel.

You should assume that the parties to the hypothetical negotiation believed the patents were valid and infringed and were willing to enter into a license agreement. In determining the amount of a reasonable royalty you may consider evidence on any of the following factors:

(1) Any royalties that the inventors received from licenses to others under the '159 patent and the '461 patent;

(2) The rates that Sprint Nextel pays to use other patents comparable to the '159 patent and the '461 patent;

(3) The nature and scope of the license as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or customer to whom the manufactured product may be sold;

(4) The inventors' established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

(5) The parties' commercial relationship, such as whether they are competitors in the same territory in the same line of business;

1    ↑  (6) The effect of selling the patented specialty in promoting sales of the Sprint

2    Nextel's other products, the existing value of the invention as a generator of sales of its

3    nonpatented items, and the extent of such derivative or convoyed sales;

4            (7) The duration of the patents and the length of the license;

5            (8) The established profitability of any products made under the patents, its

6    commercial success, and its current popularity;

7            (9) The utility and advantages of the patented inventions over the old modes or

8    devices, if any, that had been used for achieving similar results;

9            (10) The nature of the patented inventions and the benefits to those who have

10   used the inventions;

11           (11) The extent to which Sprint Nextel has used the invention, and any evidence

12   that shows the value of that use;

13           (12) The portion of the profit or selling price that may be customary in the

14   particular business or in comparable businesses to allow for the use of the invention or

15   analogous inventions;

16           (13) The portion of the realizable profit that should be credited to the invention

17   as distinguished from nonpatented elements, the manufacturing process, business risks,

18   or significant features or improvements added by Sprint Nextel;

19           (14) The opinion testimony of qualified expert witnesses; and

20           (15) Any other economic factor that a normally prudent business person would,

21   under similar circumstances, consider in negotiating the hypothetical license.

22           (16) The amount that a licensor (such as Mr. Fomukong and Mr. Chesney) and

23   a licensee (such as Nextel) would have agreed upon at the time the infringement began

24   if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the

25   amount which a prudent licensee - who desired, as a business proposition, to obtain a

26   license to manufacture, sell, or use a particular product or system embodying the patented

27   invention - would have been willing to pay as a royalty and yet be able to make a

28   reasonable profit and which amount would have been acceptable by a patentee who was

1    willing to grant a license.

2            The final factor establishes the framework which you should use in determining

3    a reasonable royalty, i.e., the payment that would have resulted from a negotiation

4    between a patent holder and the infringer taking place at the time when the infringing

5    sales first began.

6            No one factor is dispositive and you can and should consider the evidence that

7    has been presented to you in this case on each of these factors.

1

2

3

# COURT'S INSTRUCTION NO. 35

## REASONABLE ROYALTY – TIMING

4      Although the relevant date for the hypothetical reasonable royalty negotiation is

5 just before the infringement began, you may consider in your determination of reasonable

6 royalty damages any actual profits by Sprint Nextel after that time and any commercial

7 success of the patented invention in the form of sales of the patented or infringing

8 products after that time. You may only consider this information, however, if it was

9 foreseeable at the time that the infringement began.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COURT'S INSTRUCTION NO. 36

## DATE DAMAGES BEGIN

In determining any damages you may decide to award, the damages commence on the date that Sprint Nextel began infringing the patent and the patent was enforceable.

Enovsys and Sprint Nextel agree that the start date for any damages for infringement of the '159 patent is January of 2002.

The Court has determined that the start date for any damages for infringement of the '461 patent is June 2, 2006.

# COURT'S INSTRUCTION NO. _37_
## WILLFUL INFRINGEMENT

If you have decided that Nextel has infringed the '159 patent or that Sprint Nextel has infringed the '461 patent, you must go on and address the additional issue of whether or not this infringement was willful.

Willfulness requires you to determine three things:

(1)  Sprint Nextel was aware of the infringed patent;

(2)  Sprint Nextel acted despite an objectively high likelihood that its actions infringed a valid patent; and

(3)  this objectively high risk was either known or so obvious that it should have been known to Sprint Nextel.

To prove willful infringement, Enovsys must establish that Sprint Nextel willfully infringed by clear and convincing evidence. That is, Enovsys must prove that is highly probable that any infringement you find was willful.

In deciding whether or not Sprint Nextel committed willful infringement, you must consider all of the facts, which include but are not limited to:

(1)  Whether or not Sprint Nextel intentionally copied the claimed invention or a product covered by the '159 patent or the '461 patent;

(2)  Whether or not Sprint Nextel possessed a reasonable basis to believe that it had a substantial defense to infringement and reasonably believed that the defense would be successful if litigated; and

(3)  Whether or not Sprint Nextel made a good faith effort to avoid infringing the patent, for example if Sprint Nextel took remedial action upon learning of the patent by ceasing infringing activity or attempting to design around the patent.

You must decide the issue of willful infringement separately for each of the patents and each of the defendants. In other words, you must make a separate determination regarding willful infringement of the '159 patent by Nextel, willful infringement of the

1    '461 patent by Nextel and willful infringement of the '461 patent by Sprint.

# COURT'S INSTRUCTION NO. 38

## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

# COURT'S INSTRUCTION NO. 39

## USE OF NOTES

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

# COURT'S INSTRUCTION NO. 40

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the court security officer, signed by your presiding juror or by one or more members of the jury.

No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time.

You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone - including me - how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

# COURT'S INSTRUCTION NO. 41
## RETURN OF VERDICT

A form of special verdict has been prepared for your convenience. You will take this form to the jury room. I direct your attention first to the form of special verdict.

You will note that each of the questions in the special verdict calls for a "Yes" or "No" answer. The answer to each question must be the unanimous answer of the jury. Your foreperson will write the unanimous answer of the jury in the space provided opposite each question, and will date and sign the special verdict when completed. As you will note from the wording of the questions, it may not be necessary to consider or answer a later question, depending upon your answer to an earlier question. You should be careful to read and follow the instructions following each question.

When you have reached unanimous agreement as to your special verdict, have your foreperson fill in, date and sign the form which sets forth the verdict upon which you unanimously agree, and you will then return with the completed special verdict to the courtroom.